# UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF THE DISTRICT OF COLUMBIA

Steven Ivey,
7611 S. Orange Bl. Tr.
#278
Orlando, FL, 32809

      Plaintiff,

      V.

National Treasury Employees Union
1750 H Street, NW
Washington, DC, 20006

      Defendant.

**FILED**

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CASE RE-ASSIGNED

SULLIVAN, J. EG

Civil Action No.

CASE NUMBER  1:05CV01147

JUDGE: Unassigned

DECK TYPE: Employment Discrimination

DATE STAMP: 06/09/2005

# COMPLAINT PURSUANT TO RULE 8 OF FEDERAL RULES OF CIVIL PROCEDURE

The jurisdiction for this case as per Federal Rules of Civil Procedure, Rule 8(a), can be seen from the Union's involvement in related Civil Actions involving the Plaintiff and the US Treasury as pending in this Court and US District Court in Northern Georgia stemming from testimony and documentation as submitted in the District of Columbia for related investigations and documentation.

The termination of the Plaintiff from the Treasury involved the inappropriate presence and coercion of the Union by steward Doug Van Buren of the Plaintiff. Doug Van Buren was informed by the Plaintiff of the  Plaintiff's reported violations against the  Treasury  but continued to participate in conjunction with the

**RECEIVED**

1

APR 2 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Treasury to have the Plaintiff removed.  This was not Doug Van Buren's role as a Union

steward nor does the Union have any bargaining agreement for reasons of termination of

for "poor rating" as stipulated by the Treasury (Attachment 1).  Doug Van Buren in this

incidence encouraged the Plaintiff to sign a false statement by Robert Hall that would

incriminate the Plaintiff repeatedly after the Plaintiff refused to sign (Attachment 2 & 3).

From this incidence the Union violated the Plaintiff's Fifth Amendment Rights.  This

contradicts the Union's failure to respond to the Plaintiff's Prior request for

direction/assistance in dealing with problems associated with Treasury procedure that

demonstrated violations of rules/regulations and discriminatory actions against the

Plaintiff.  After initial attempts to contact the Union were ignored the Plaintiff proceeded

to inform and report violations to outside resources.

　　　　　The Union further, by  collective action with the Treasury.  Submitted

false reports about the Plaintiff as can be seen by the inclusion of Union's  involvement

in the Treasury's EOP file 02-1135  and Doug Van Buren's continued contributions

compiled during the Treasury's investigation into the violations of Civil Rights.  As can

be seen in Attachments 3 & 4, the Union participated with the Treasury in removing the

Plaintiff from employment improperly and further discriminated against the Plaintiff.

The alleged phone call as reported by Union employees Lisa Porter and Angela Strong

approximately on March 30, 2001 is discriminatory towards the Plaintiff because the

Plaintiff asserts that the phone call did not occur and the request for proof to the contrary

by the Treasury and/or the Union has not been provided. Prior to the Plaintiff's March 7,

2001 removal from employment from the Treasury the Plaintiff contacted the

2

appropriate committees of both Houses of Congress, the OSC, the Inspector General of

Taxation and the DOJ with reported violations. The EEOC was then contacted formally

after the Plaintiff's termination in addition to the prior offices. Thus, the Union would

need to explain why a person would think the Union President could resolves Treasury

violations of Constitutional issues, Civil Rights issues, and criminal violations as reported

by the Plaintiff and demonstrated in related cases in District Court in DC and

Atlanta, GA. Additionally, Doug Van Buren as seen in Attachment 3, contributed to the

Treasury's improper removal of the Plaintiff from employment by recommending that the

"we should proceed to remove this employee as soon as possible."  From these reports as

included in the treasury EOP file 02-1135 the Union acted in a manner discriminatory to

the Plaintiff without regard to the Plaintiff's Civil Rights and proper procedure. It

evidences the Union's attempt to discredit the Plaintiff so as to benefit the Treasury in

related investigations/Civil Actions and to project itself as being non-partisan in the

Plaintiff's attempt to seek remedies from the Union.

From documentation and testimony these concerns demonstrate violations

of **18 USCS  1001**- Falsifying Records, **18 USCS  241**-Conspiracy to Interfere, **18 USCS**

**242**-Depriving of Rights,  **18 USCS   1341**- conspiring against the plaintiff and **Title VII**

of  Civil Rights .

Under civil statutes **42 USCS  1981**,  **42 USCS  1983**,  **42 USCS  1986**,

**42 USCS  1988**  and  **42 USCS  2000e**  the Plaintiff is entitled to relief for the above

listed violations. This is pursuant to Federal Rules of Civil Procedure 8(a).

The plaintiff  is seeking action to remedy the situations To further,  the

3

plaintiff is seeking compensatory damages, punitive damages, future offset damages, cost involved in the prosecution of the complaint, and related fees of processing this complaint.

The plaintiff is requesting a jury trail for this case.

**The plaintiff is requesting that the Court appoint the plaintiff an attorney. (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C 2000e *et seq*: the Rehabilitation act of 1973, as amended, 29 U.S.C. 791(c) ).**

4/25/05
_____
**Date**

_____
**Plaintiff**

**Steven Ivey**

4

As an employee, the appellant was covered by the collective bargaining agreement between the National Treasury Employees Union (NTEU) and Internal Revenue Service (IRS), however this agreement does not cover the termination action being appealed.

Cordially,

Yvonne Woods
Workforce Relations Consultant

**FILED**

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

05 1147

Attachment #1

March 5, 2001, 2001

Steve Ivey

Steve:

This is a recap of the meeting I had with you in my office the week before last . You returned to duty February 20th at 6 p.m.   You were instructed to report to the Data Conversion Conference Room at 6:30 p.m. for Refresher Training.

Kelly Mancle was the instructor for this class.  Ms. Mancle made sure everyone had the proper supplies and materials that were needed for the class.  According to Ms. Mancle, you continued to read a book and not pay attention thoughout the class.  At one point, you got up and left and were gone for 35 minutes.

When I was made aware of this I instructed Ms. Mancle to have you report to my office.  She told you to do this and you disappeared again.  After about 10 minutes you came to my office.

You explained to me that you were a returning operator and that you didn't feel the need to sit in the class.  You also told me that in the past you had encountered problems dealing with Ms. Mancle and you thought she picked on you and singled you out.  I explained to you how important  the Refresher Class is,  and that I found it hard to believe that she was picking on you in front of the other employees.

At this point the class was almost over.  You and I agreed that since you were not feeling well, you would go home and report to work the following evening.

Steve, as I explained to you last week, you are in class for a reason.  Reading your book, not paying attention in class and leaving the classroom is unacceptable behavior, and will not be tolerated.  According to the Rules of Conduct this is insubordination. Your latest Quarterly shows you are rated a "1" in Quality, and a "3" in Quantity.  Your Courtesy Review from last week, showed you had 4 documents in error, out of 10.  The purpose of the Refresher Class is to help reduce your error rate.

This is your third season, and you have always had an unacceptable quality rate.  You are still on probation.  After considering the facts that you have a very low accuracy rate and that you chose not to participate in the refresher course I have decided to recommend that your employment be terminated.

**FILED**

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

_Robert M. Hall_
Chief, Section III-B
Data Conversion Branch

Employee Sign and Date
_employee refused to sign_
3/5/01

05 1147

*Attachment #2*



Linda:

I discussed this case with you last week. This employee is the one who is rated a "1" in Quality and walked out of the training class because he thinks Kelly picks on him in front of the class.

He has had a high error rate since he returned this year. In fact, you can see that his quality never was very good and it continues to drop.

Doug Van Buren and I met with the employee for an hour tonight. Doug encouraged him to resign three times, but he refused. Doug told me that he thinks we should proceed to remove this employee as soon as possible. Betty Burris agrees with that.

I would like to expedite this if possible.

*Thanks*
*Robert*

*He's also the one who wanted to only have a white union steward represent him.*

**FILED**

JUN - 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*Attachment #3*

05 1147

**RECEIVED**

MAR 0 6 2001

LR/ER Section II

*1*

~~Hall Robert M~~

**To:**    Ferguson Linda C; Truss Karen D; Brown Brent E
**Subject:** Re: Steve Ivey

I had an interesting conversation tonight with Lisa Porter (NTEU Rep) concerning Steve Ivey.
He called the union office either Thursday or Friday and spoke to Angela Strong. He told her he was terminated because of his beliefs. She asked him what his beliefs were. He told her that he did not intend to take orders from any nigger or faggot. He asked to speak / meet with the president of the union.
This is all that we know so far, but I wanted to make you aware of what I heard.

*Robert Maupin Hall*

*Chief, Section I - R*

*Data Conversion Branch*

770--455- 2528

**FILED**

JUN – 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

05 1147



Attachment #4