UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

FILED
JUL 0 5 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Steven Ivey,

    Plaintiff,

    V.                             Civil Action No. 05-1147

National Treasury Employees Union,

    Defendant.

**PLAINTIFF'S MOTION TO REOPEN THE CASE WITH
CONSIDERATION TO OBJECTIONS AND CORRECTIONS**

**INTRODUCTION**

    The following represent the plaintiff's objections and corrections to the Court's Order dated May 15, 2005 and the accompanying Memorandum Opinion. There are three general areas of erroneous (1) the assessment that all claims "stem from his termination"; (2) the issue of filing separate claims instead of the Court's suggestion of amending; and (3) the defendants as listed for the related civil actions.

**( i )    The analysis of the related cases for the Court's clarification with explanation:**

**(a)** Case 04-0394 is for violations of harassment in particular sexual

harassment. The issues presented here are independent of the plaintiff's termination in March 2001. These violations for this case can be traced to treatment of the plaintiff beginning in February 1999.

**(b)** Case 04-0395 concerning First and Fifth Amendment Rights only partially occurred during the process of the plaintiff's termination. The infractions of the defendant in violating the plaintiff's First Amendment Rights in evident at different periods during the plaintiff's employment as well as afterwards.

**( c)** With case 04-0396 the violation concern the issues of discrimination based on gender and race. The practice of the these violations occurred throughout the plaintiff's employment and processing of job functions as explained in the complaint as well as in the aftermath of the complaint processing. These issues would as in 04-0394 be independent of the plaintiff's termination.

**(d)** Case 04-0214 deal more specifically with documentation and record violations of the defendant in relation to the Privacy Act. It also demonstrated further violations of the defendant such as age discrimination. Much of the information was collected as a result the total complaints which was not specific to termination. The files provided is are also absent of

proper procedure of investigation by not reviewing all reported violations.

**(e)** The plaintiff through the process of MSPB that dealt with issues of reporting prohibited practices was limited as to the examination of the defendant's problems of work performances and related job functions. This means that case 04-1377 concerns the issue that just because the MSPB process determined that the plaintiff was not terminated for the limited single issue of violation to taxpayers' presidential donation box against their consent does not mean that the plaintiff was terminated properly as his claim states. The plaintiff during this process according to **5 USCS 7701,** was to be entitled to temporary relief to which the defendant did not comply.

**(f)** Because the documentation and more detailed review of the defendant the issue of reporting violations to OSC continue. The questions as to why the OCS did not investigate the prohibited practices especially when they are very blatant and the suspicious circumstances that the OSC refuses to explain for violations that the OSC defines as *de minus* in nature. Thus, case 05-0176.

**(g)** Because the defendant refuses to further comply with document/record request of the plaintiff for cases 04-0394, 04-0395, and 04-0396 the plaintiff needed to file an FIOA/Privacy Act complaint to obtain records that in some

3

cases are required of the defendant to be made available to the public. This resulted in the need for case 05-1095.

**(ii) Case analysis and explanation compared to Memorandum Opinion errors:**

**(1)** In relation to first error not all claims stem from the plaintiff's termination. To further, had the defendant processed complaints and work environment problems then any later evidence and issues would gave been discovered prior to any termination if it would have then even reached such an wrong and unnecessary point.

**(2)** The plaintiff did in fact follow the DC Court's suggestion that the other cases be amended. However, the District Court for the Northern Georgia refused to amend the cases 04-0394, 04-0395, and 0396. A recent Writ of Mandamus as filed by the plaintiff in Appeals Court for the Eleventh Circuit can offer an better understanding of this conflict (see attached Writ).

**(3)** The error concerning the listing of the defendant(s) can be seen by the fact that in all the cases as described herein the Treasury Union is not a defendant. In addition, the effort of the plaintiff to have the Treasury Union joined as defendant for the cases 04-0394, 04-0395, and 04-0396 was rejected by the US Treasury and the Northern Georgia District Court.

4

**(iii) Characteristics genuine to the complaints against the NTEU:**

**(w)** The significant characteristic with the National Treasury Employees Union, (NTEU), is that it is not a governmental agency. There would subsequently be different civil action processing as appropriate to the NTEU though issues are similar to those of the above listed cases with the US Treasury. The NTEU acted in a liable manner in a false report to the Treasury EOP investigator. The US Treasury acted as a carrier for the false and discriminatory act. Similarly from case <u>Trans World Airlines, Inc. v. Thurston,</u> 496 U.S. 111, 121, 105 S. Ct. 613, 621-622 (1985) remarks and comments as stated by the NTEU are discriminatory.

**(x)** The duty of the NTEU and mission of the US Treasury cause there to be different views and determinations as to what is discriminatory and violation to Constitutional issues. For incidence the US Treasury is some instances can limit employees' First Amendment Rights but the NTEU would be treated as a non-governmental entity. Because the plaintiff asserts that he did not make the specific comments as submitted in the original complaint the NTEU may be reviewed in the complaint for First Amendment violations towards the plaintiff.

**(y)** In closer examination, the lack of and improper involvement of

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Civil Action Nos. 04-0394; 04-0395; 04-0396 (consolidated)
US DISTRICT COURT FOR NORTHERN GEORGIA DISTRICT


STEVEN IVEY,

    Appellant,


V.                                    WRIT OF MANDAMUS
                                           PETITION


JOHN W. SNOW, Secretary,
U.S. Department of the Treasury,

    Appellee.


IN RE STEVEN IVEY


**I. Relief Requested:**

( i)  Strike the Defendant's Motion for Summary Judgment

( ii) Order the Department of Justice to process an investigation into the related criminal charges as referenced in the cases herein. The stipulations of criminal statues states for cases of pro se/In Forma Pauperis that it is the duty of the DOJ.

( iii) Allow the amending of criminal charges to the referenced cases and age discrimination allegations.

( iv) Order the Defendant to provide positive identification of relative employees who are witnesses and violators as they are relative to the cases herein.

( v) Extend the Discovery Period to allow for the completion of the request listed for this Writ; and the collecting of documentation from case 05-1095: Ivey v. US Treasury (FIOA/Privacy Act).

## INTRODUCTION

Prior and during the Civil Rights movement in this country there existed a racist(s) practice of training a dog to attack blacks. This training was accomplished by depriving, from birth thru being a puppy, of food and water to weaken it. Then the racist would find black drunks/bums and ply them with liquor/money to abuse the dog. The black person(s) would abuse the dog in many different forms as instructed by the racist. It would include pulling on the dog, kicking it, hitting it with objects, and/or eating and drinking water near it while the dog received none. The racist would continue this practice using different blacks, with the puppy only being given food and water from the racist, for the period of the puppy's development. Each act of abuse , each hit worst than the pervious with the collected abuse becoming the dominant characteristic of the puppy's existence. The end result is that the dog would be trained to react

2

negatively, untrusting, and unexplainably bad towards blacks and positively toward the racist(s). The dog was sacrificed as a pawn in a battle beyond its knowledge, choice, and well being. The defendant and related processing in the referenced cases has demonstrated and encouraged this practice towards the plaintiff in an effort to intimidate, harass, provoke, deny rights, and misdiagnose.

## II. The issues presented:

(a) The defendant has submitted a Motion for Summary Judgment that is erroneous in such a way as it infringes on the plaintiff's Fifth Amendment Rights thus making it improper. The District Court is prejudicially giving assistance to the Motion which is improper.

(b) From the issue in (a), above, the defendant/DOJ as assisted by the Court is infringing on the Fourteenth Amendment Rights of the plaintiff. This would also include the DOJ's failure of equal protection under law.

( c) Review related issues as obstruction of justice by failure to investigate criminal charges and/or have those issues be amended in the cases herein as has been done for related cases.

(d) Review the in consistency between the District Court of the District of Columbia and that of the Northern District of Georgia in relation to amending charges; consideration to prose litigants; and in filing in forma pauperis.

(e) Review the repeated attempts of the defendant to discredit, intimidate, mislead, and deny rights. Recognize that this behavior is encourage and influenced in all proceedings.

3

(f) Consider extenuating circumstances and refusal of the defendant to cooperate as being beyond the control of the plaintiff in order to extend the discovery period for the cases referenced herein.

## BACKGROUND

The plaintiff began work with the Treasury/IRS a seasonal data transcriber at the Doraville Processing Center, Atlanta. After the plaintiff witnessed violations to IRS and EEOC rules in the work environment and infractions to taxpayers' documents the plaintiff wrote to the IRS Complaint Division in November 1999. During the next tax season the plaintiff experienced similar violations in addition to retaliation and blatant sexual harassment. The plaintiff in November 2000 sent a report as such to the IRS Complaint Division; the Treasury Inspector General of Taxation; the Office of Special Counsel; the Department of Justice; and the appropriate committees of both Houses of Congress.

These violations of taxpayers' documents were to change the documents and in some instances were directed at different groups as can be reasoned to be discrimination. The work place environment violations included mistreatment of the plaintiff in areas of retaliation; race and sex discrimination; and sexual harassment. The retaliation was of the form of

4

interrupting the plaintiff as he worked; inappropriate comments; brow beating; misinforming the plaintiff of job functions; and intimidation to sign false and negative statements of the plaintiff in violation of Fifth Amendment Rights. Race and sex discrimination was of the form that gave preferential treatment to females particularly black females by creating a double standard in regards to following rules of attendance, work duties, lack of corrective measures, and managers encouraging EEO violations and ignoring rules. The workforce majority at the processing center was female and of those black females were the majority. Sexual harassment was in the nature of the plaintiff being given an unsolicited invitation to a party of sexual theme, encouraged by managers to be given to the plaintiff, in spite of previous reports of no solicitations. The plaintiff was then terminated in March 2001 as all the above continued to be directed at the plaintiff in such manner as it violated the plaintiff's Fifth Amendment Right so as to incriminate the plaintiff in comparison to the reported violations.

    The plaintiff followed through the processes of the EEOC and the OSC/MSPB beginning in March of 2001 as the respective allegations of whistle-blowing; termination there of; discrimination; and harassment splintered respectively. Many of the circumstances that originated at the

Doraville Center have persisted in some form throughout the efforts to seek justice by the plaintiff.

One of the reported violations of the plaintiff was the witnessing of US Postal employees working as data transcribers at the Doraville Processing Center which is against Treasury and federal employment regulations. Also, reported by the plaintiff was an incidence in which one manager made suspicious remarks as to the contents of the plaintiff's mail one evening. During this period the plaintiff had an American Express monthly statement pirated for his mail from which a fraudulent card was issued in a woman's name with the cost being charged to the plaintiff. Since these incidences were reported to the Treasury and has been part of the continuing process associated with the referenced cases, the plaintiff's mail has been interrupted, delayed, and missing. This includes failure of Court correspondences not reaching the plaintiff. This has created obvious problems for the plaintiff that the defendant uses to exploit justice. This occurred especially with the EEOC process wherein the Treasury EOP file 02-1135 and the administrative hearing orders were never delivered to the plaintiff properly.

In receiving the Treasury EOP file 02-1135 in January 2002 the

6

review by the plaintiff revealed that there were issues of discrepancies in the testimony of the employees interviewed pointing to perjury, conspiracy, improper procedure, and forgery. There were improper procedures during the gathering of information by the defendant for the EOP file. The plaintiff reported these to the defendant and the Department of Justice in the Spring of 2002. The defendant has not denied the charges and the DOJ to date has not investigated.

The EEOC determined that the Administrative Judge and the attorney for the IRS acted improperly in dismissing the case. On appeal the EEOC stated that there was sufficient evidence to proceed, without an administration hearing, with the cases herein 04-0394, harassment-generalized and sexual harassment; 04-0395, First and Fifth Amendment Rights; and 04-0396, gender and race discrimination; in January 2004 in Northern Georgia District Court.

During the processing of the three cases the defendant included Wrongful Termination as one of the issued to be tried for these cases. The Court further processed the cases as consolidated and continued with the mistake. The plaintiff repeatedly responded with corrections to the defendant/DOJ as well as the Court but the error remains in the most recent

7

EEOC has the right of review. The defendant, MSPB, and the DOJ have been informed of these errors but to date nothing has been done.

In related case 04-0214, Privacy Act District of Columbia, by the plaintiff is an attempt to seek justice for FIOA violations related to documentation and to assist in the collection of documents refused by the defendant. In this case the issues of violations to the plaintiff's First Amendment Rights is at question, in particular to altering the plaintiff payroll paperwork, an act of fraud, without consent. Listed for this case are other First Amendment violations as derived from the review of the documentation supplied by the defendant in December 2004. One significant problem is that the documentation as produced by the Treasury Inspector General's investigation file is that it is a false document in which much of the cited testimony inaccurate and not chronically proper. This fact was reported to the defendant and the DOJ listing the inaccuracies of the file. Issues of obstruction were raised to the defendant and the DOJ but to date no denial or receognition has occurred.

In an effort to have the more criminal issues explored the plaintiff raised the issues of forgery, perjury, conspiracy, and obstruction of justice in case 04-1272 in the District Court of DC. This case was

dismissed, however, with the suggestion that the issues be amended to the other pending cases. The plaintiff in turn did this to each of the cases pending as they issues represent prima facie evidence.

The amended allegations being amended in the cases in the District of Columbia and Northern Georgia District was accepted in DC Court but not in Georgia Court. Additionally, the plaintiff attempted to compel discovery in the Georgia District from the defendant but was denied these request and the request to extend discovery. Much of the information requested in such that most information is for the public to request. To this the plaintiff filed a FIOA/Privacy Act complaint, 05-1095, in May 2005 so as to receive the documentation refused by the defendant for the cases referenced herein. Much of this information also serves as statistical prima facie evidence.

The plaintiff appealed the Northern Georgia District Court decision to deny the plaintiff's Motions to Compel and extension of discovery period in case 05-10950. This case was dismissed for lack of jurisdiction.

As mentioned previously the defendant has requested a Motion for Summary Judgment to dismiss the cases herein and the Georgia District

(4) The defendant and DOJ were informed of the problems with the EOP file 02-1135 in Spring 2003. Herein the plaintiff raised issues of conspiracy, perjury, forgery, and obstruction of justice.

(5) From the comparison of the testimony from the EOP file; the witness testimony of the MSPB hearing; the testimony from the Treasury Inspector General's Complaint Division; and statistical data there are issues of falsifying records and perjury. These issues where reported to the defendant and the DOJ but to date not action has been taken.

(6) Fro the formulation of the record for the cases referenced herein the defendant, with prejudicial assistance form the Georgia District Court, incorrectly added the issue of wrongful termination.

(7) The plaintiff filed the wrongful termination civil action in September 2004; eights months after the filing of the referenced cases. During the filing of cases 04-0394, 04-0395, and 04-0396 the MSPB had not finished it determination.

(8) From related case 04-0214 was discovered in December 2004 more areas of discrimination such as age discrimination. The plaintiff had submitted an amended complaint to the cases herein citing as one of the authorities the most recent Supreme Court case of <u>Smith v. Jackson</u>, 03-1160, March 30, 2005, wherein the Court determined that the plaintiff did not have to prove intent in order for age discrimination to have occurred.

(9) The issues of the First Amendment Rights of the plaintiff as raised in case 04-0214 contained in Treasury records was not denied by the defendant.

(10) The plaintiff has attempted to amend the cases herein with the criminal charges as recommended and allowed by/for cases in the DC district but not by the Northern Georgia District Court.

(11) The temporary relief as stipulated by **5 USCS 7701** during the pending decision of the MSPB was not awarded to the plaintiff.

12

(12) During the discovery period for the cases referenced here the defendant and DOJ/Webster stated that particular manuals from 2001 training class in question were available online. This is not true because if the were it would suggest that the practice of the defendant is to have 300 to 400 data transcribers at each of the nine federal processing centers making $13 to $16 per hour for 5 plus hours to correct manuals of the IRS when they could download them as corrected by the fewer number of employees that edited them. This represents a gross waste of funds. If not then the plaintiff assertions that the training class, February 20, 2001, in which a manager who repeated discriminated against the plaintiff was the instructor and action during the class was designed to harass and provoke the plaintiff.

(13) The request of the plaintiff for records, documentation, and statistical reports that are readily available upon the request of the public were denied by the defendant. The motion to compel such information was denied by the District Court.

(14) The defendant has refused to supply the identity of employees relative to these referenced cases as witnesses and for reported criminal violations. The District Court has denied the plaintiff's Motion to Compel this identification.

(15) The plaintiff has filed an FIOA/Privacy Act claim, 05-1095, with the District Court of DC in order to obtain the information from facts 13 & 14.

(16) The plaintiff further requested an extension of the discovery period citing facts 13 & 14, and additionally issues such as the Florida hurricane season of 2004 wherein the residing area of the plaintiff was considered a state of emergency and authorized curfews; and the issue that a black female cashier at the Greyhound bus terminal misdirected the plaintiff so as to miss the Court hearing to review the Motion to Compel. This request was denied.

(17) The defendant's Motion for Summary Judgment is improper as the issues of the referenced cases are inaccurate. This error has been reported to the defendant and the Court. The incorrect inclusion of the issue of wrongful termination causes adverse effects on the plaintiff in which it

13

(23) Under statutes of **18 USCS 1001**- Falsifying Records; **18 USCS 241**-Conspiracy to Interfere; **18 USCS 242**-Depriving of Rights; **18 USCS 1513**-Retaliating Against Informant; **18 USCS 1341** Conspire Against an Individual; **18 USCS 1505** Obstruct of Justice; forgery; and perjury it is stated that if the victim is unable to prosecute such charges then the DOJ is to pursue the charges. This would apply to the plaintiff as he is pro se and filing in forma pauperis.

(24) The cases 04-0394 and 04-0396 referenced herein the complaint issues have dealt with double standards of treatment to the plaintiff as a white male by female employees, particularly black females. However, as demonstrated none of these individuals have received any disciplinary action of even insubordination. The harassment practices directed at the plaintiff were never corrected. These fact are prima facie evidence and further supported by the investigation files. The issue of blatant sexual harassment was not processed properly and the defendant refuses to supply documentation as was its duty to do. As false accusations issues of insubordination by a suspect manager were raised against the plaintiff the defendant went to extremes to prosecute improperly. This evidences a double standard as exercised by the defendant.

(25) The complaints and issues associated with the initial reports sparked retaliation and similar issues for the plaintiff which did not happen prior to the reporting of the prohibited practices and rights violations. The beginnings of these occurred as the plaintiff was leaving the Doraville IRS Center, GA. The incident was perpetrated by a black female Angela to whom had harassed the plaintiff. Angela on the highway exhibited aggressive driving towards the plaintiff's car. This was witnessed by another IRS employee. During furlough that year, Fall 2000, a similar incident in Norfolk/Hampton, Va. When the plaintiff was back at home. In leaving college one afternoon a black female who attend the same school as the plaintiff exhibited aggressive driving forcing the plaintiff off the highway. The plaintiff followed this individual who later caused an accident by rear ending another car. Additionally, during the MSPB proceedings when the plaintiff prevailed on appeal there were two black males who boxed the plaintiff in an area near the Norfolk, Va. post office

15

defendant demonstrates no standard that is adhered to consistency. The District Court in it's improper review; lack of correction; and denial for repeated request for documentation demonstrates that as with the "racist trained" dog, it had to be destroyed.

### VI. Reasons why the writ should be issued: (also include that mandamus is appropriate because there is no other remedy)

Should the defendant be allowed to "steal a victory" the problems would not go away as experienced by the plaintiff. For what, if any, unexplained reasons the plaintiff is not going to "beg for his Rights."

The defendant refuses to address the issues properly and encourages and misdirects any corrective authority it can manipulate. This is a significant reason for this Writ. The attempt to erroneously include/exclude complaint issue repeating behavior to violate the plaintiff's Fifth Amendment Rights with the assistance of the District Court evidences the collective effort to violate the plaintiff's Fourteenth Amendment Rights.

The refusal of the District Court to amend the complaint with criminal issues and age discrimination contradictory to the DC District Court supplies further reasoning as to the need for this Writ of Mandamus. The amending would also help promote judicial efficiency.

17

The extension as refused by the District Court is necessary for the consideration of this Writ; the examination of evidence as it reaches the plaintiff; and the retrieval of records/documentation from related case 05-1150.

For all of the reasons, facts, and issues presented herein the suspicion of the defendant's effort to prevent the plaintiff's Seventh Amendment Right can be considered because a jury would find the issues herein more than reasonable. This is also appropriate for the pursuit of this Writ.