UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


STEVEN IVEY,

      Plaintiff,

      V.

NATIONAL TREASURY
      EMPLOYEES UNION ,

      Defendant.

Civil Action No. 05-1147


**APPEAL OF DISMISSAL ORDER OF JULY 12, 2005**

**Background**

      As an employee of the US Treasury the plaintiff worked at the IRS Processing Center Doraville. During this employment, from January 1999 to March 2001 the plaintiff participated informed the Tax Comissioner, the Treasury Inspector General of violations to taxpayer documents, department procedures, and act of harassment/discrimination.

      The plaintiff was terminated through irregular and improper procedure on March 7, 2001. The plaintiff, as was already established, continued to seek remedy and relief through the EEOC and OSC/MSPB.

1

Attachment #C details the cases as to date for the continued processing of the complaints starting with (i) "analysis" (a) thru (g).

Because of improper involvement of the National Treasury Employees Union (NTEU) the plaintiff filed a complaint, Attachment # A, for the case herein. In this filing the plaintiff describes the Union's violation to the plaintiff's Fifth Amendment Rights and acts of harassment/discrimination. Attachments #1 thru #4 relate these violations. The Union through exercising its First Amendment Rights infringed on the plaintiff's First Amendment Rights with accusations that were reported three weeks after the plaintiff's termination, March 29 or 30, 2001.

The District Court's Memorandum Opinion and Order dated June 9, 2005, attachment # B in response to the filed complaint dismisses the plaintiff's complaint. However, as noted in the plaintiff's Motion for Reconsideration, attachment # C, there are mistakes of reason and fact associated with the original dismissal.

The District Court on July 12, 2005 issued a similar order denying the plaintiff's Motion for Reconsideration, attachment # D, thus, holding the dismissal of the original complaint valid.

2

**(i) Facts/Evidence**

(a) The NTEU has no bargaining argreement with the US Treasury for matters of termination reasons as stipulated by the US Treasury. See attachment #1.

(b) The NTEU was improper in it presence and coersion of the plaintiff to sign a false document, attachment #2. The document is not an official department form or document. Dated March 5, 2001 this document was created to discredited the plaintiff in an effort to have prior complaints dismissed. The document also improperly contained the plaintiff's social security number (eliminated for inclusion herein).

(c) In attachment #3 is further evidence of the NTEU's improper involvement in the plaintiff's termination. The NTEU, as representative Doug Van Buren, encouraging the removal of the plaintiff after the plaintiff explained to him in the March 5 meeting that the accusation in terminating the plaintiff were in retaliation to the plaintiff reporting violations and harassment/discrimination prior to the plaintiff's February 20, 2001 return to work.

(d) For attachments #2 & #3 the NTEU was acting in Union capacity and therefore not under direct regulations of the US Treasury in its exercising of First Amendment Rights.

(e) Attachment #4 is a report by Robert Hall, Section Chief for the the IRS data conversion branch, as to the accusations of Lisa Porter, NTEU representative, and Angela Strong, NTEU worker, as to a phone call made to the NTEU on March 29 or 30, 2001. The report specifically states that the call was made to the "Union Office".

(f) Robert Hall, being involved in original complaints/violations, used this as a means to discredit the plaintiff. Thus, the action of the US Treasury in regards to attachment #4 is in the illegal use of the reported accusations by the NTEU. This is a separate and independent issue from the initial false report.

(g) Referenced case 04-0214, US District Court for DC, concerns the use of attachment # 4, by the US Treasury under the Privacy Act wherein the only defendant is John Snow, US Treasury. The Privacy Act does not apply to non-governmental entities.

(h) As referenced in attachment # C, Motion for Reconsideration, the plaintiff asserts that in no other referenced case is the NTEU a defendant stating the reasons why. The District Court for Northern Georgia nor the defendant, John Snow, US Treasury, allowed or approved of the amending of the list of defendants.

(i) The NTEU is not a governmental agency. The US Treasury has no authority to direct the NTEU on the federal property any more than the US Postal Service or the CDC that shared the property.

(j) Negative comments as stated in attachments # 3 & # 4, during the consideration of personnel action, termination, are evidence of discrimination as made by the NTEU in its capacity as the "Union".

(k) Attachment # 5, the plaintiff's phone bill for the time in question does not list any call made to the NTEU on the 29th or 30th nor any call to the US Treasury in the Atlanta area. The two Acworth, GA calls were made by the plaintiff to fellow employee Susan Karimi.

(l) The plaintiff has requested documentation and explanation of the March 29 or 30, 2001 call as claimed by the NTEU to both the NTEU and the US Treasury, attachments # 6 & # 7. The request to date has not been done.

(m) The cases pending in District Court as referenced in the Order dated July 12, 2005, attachment # D are 05-0176 and 05-1095. Both these cases are concerned with FIOA/Privacy Act issues of the OSC and the US Treasury not the NTEU. These two cases are primarily for obtaining documentation/records that have been refused but are to be used for the remaining cases 04-0394, 04-0395, 04-0396 (consolidated) and for 05-1150. The NTEU is a non-governmental entity.

(n) The cases 04-0394, 04-0395, 04-0396 (consolidated) stemming from the original complaints of the plaintiff, even before termination, have not been

amended with the more recently discovered charges as stipulated in the original NTEU complaint, attachment # A. Thus, the District Court's claim that the same issues as for the case herein are for the other cases in the Court is erroneous.

(o) The NTEU by it formulation is established to assist and protect Treasury employees putting it in direct opposition of interest to those of the US Treasury.

### (ii) Cited Authorities

Although public employee does not relinquish First Amendment Rights to comment on matters of public interest by virtue of government employment, these rights are not absolute, because the government as an employer, has legitimate interest in regulating the speech of it's employees to promote efficiency of it's public service.
Mandell v. County of Suffolk, CA.2 (N.Y.) 2003 316, F. 3d 368.
The US Treasury does not even from such authority regulate that First Amendment Rights of the NTEU al be it a violation of the plaintiff's First Amendment Rights. The acceptance a ready exchange of the NTEU to the US Treasury does evidence retaliation towards the plaintiff in a conspiratory nature.

The NTEU's accusations imbedded in a false report of the plaintiff's activities demonstrates the interfering of the plaintiff's efforts to

resolve matters with the US Treasury being reviewed by such authorities as the EEOC. Allegations of wrongful dissemination of information harmful to reputation of former governmental employee combined with denial of re-employment in government job states compensable due process violation. Bastel v. Federal Aviation Administration (1984, App DC 223 US App DC 297, 725 F 2d 1403).

Implication of liberty interest is within meaning of Fifth Amendment. Perry v. FBI (1985 CAT Ill, 759 F 2d 1271, ALR Fed. 563). Critical comments contained in the confidential personnel files, not subject to public disclosure cannot infringe on individual's liberty interest. Hewitt v Garlicky (1986, CA9 Wash.) 794 F 2d 1373, 1 BNA IER Vas 753. The NTEU acted independent of the US Treasury so as to harm the plaintiff infringing on liberty and property interest. The comments of attachments # 3 & # 4 by NTEU representatives demonstrates the violations to the plaintiff's Fifth Amendment Rights. The improper presence of the NTEU as seen in attachments # 1 & # 2 demonstrates the NTEU's coersion to the plaintiff's property interest of continued employment. Because the NTEU did not follow a role of a traditional Union for the plaintiff and in spite of the fact that the NTEU is not a governmental agency it can be seen,

6

similarly, that as in Ray v. Nimmo (1983 CA 11 Ala.) 704 F 2d 1480, the District Court erred in dismissing plaintiff's Fifth Amendment claim of denial of protected property interest through failure of federal agency to abide by terms of it's own merit promotion rules, since claim of constitutional deprivation is distinct from any claim of age or sex discrimination alleged by plaintiff. The NTEU did not act in the best interest of the plaintiff as is the mission of employment protection of the Union.

      Fact that conspiracy continued over long period of time and contemplated commission of many illegal acts did not transform single conspiracy into several conspiracies. United States v Mayers ,(1975, CA 6 KY) 512 F 2d 637. The plaintiff is not denying there is a connection between the US Treasury's actions and those of the NTEU. But it is improper to prosecute the US Treasury for what the NTEU exercised freely, ever how unjust to the plaintiff, for its role in the "many illegal acts" collectively towards the plaintiff. To further, under the statutes of conspiracy, 18 USCS 242, there does not have to be a formal agreement or plan. Therefore, each independent act as made from different participants

7

contributes to the same end and not entirely under the "blanket" authority of the US Treasury.

  With <u>Burlington Industries, Inc v. Ellerth,</u> 118 S. Ct. 2257 (1998) and <u>Faragher v. City of Boca Raton,</u> 118 S. Ct. 2275 (1998), the Supreme Court set 2 principles (1) employer is responsible for acts of supervisors ; (2) employees should be encouraged to prevent harassment and employees should be encouraged to avoid or limit the harm from harassment. When in attachment # 4 the individuals acted as "employees" of the NTEU then the NTEU is responsible for them. These individuals in turn did not practice restraint and professionalism dealing with controversial issue so as to separate their own personal bias. The US Treasury has not assumed any responsibility for the actions of the NTEU. The US Treasury's involvement is in the improper use of the violation not it's origination.

### (iii) Analysis

  The NTEU's actions paralleled those of the US Treasury with regards to First and Fifth Amendment violations as seen form attachments # 2 , # 3, & # 4, But this was two entities working to a common end. The NTEU is not a governmental agency. When as in attachment # 4 the NTEU acted in the official capacity of the "Union" the US Treasury has no

authority to restrain or limit First Amendment Rights. The NTEU making adverse and negative reports of the plaintiff's First Amendment Rights, even is that choice was to not call the NTEU, is a violation of First Amendment Rights so as to incriminate the plaintiff, thus a violation of Fifth Amendment Rights. The NTEU being improperly present; contributing support during decisions of personnel actions of the US Treasury; and making false unsubstantiated claims against the plaintiff constitutes direct evidence of discrimination of the part of the NTEU.

The District Court in its July 12, 2005 Order to dismiss the complaint references two similar cases in that court; cases 04-0214 and 05-0176. These cases as previously explained concern the improper handling of the documents/records and processing of the plaintiff's original complaints. The purpose for these is because the US Treasury refuses to supply documents/records for the remaining referenced cases. The NTEU has followed similarly from request of the plaintiff for records and testimony of the individuals of the NTEU that contributed to the violations, however, the NTEU is not governed by the FIOA/Privacy because it is not a government entity. Enclosed with this appeal is the plaintiffs Declaration of facts and issues relative to the NTEU's involvement in the present issues.

9

As more documentation is supplied to the plaintiff there are more areas evidentiary of violations that until this documentation were entirely unknown to the plaintiff. The NTEU's involvement and improper contributions to the personnel actions of the US Treasury contradicts the mission of the NTEU.

The District Court has not fully considered these fact presented herein. It has mistakenly assumed that "parallel issues" are "mirror images." However, this is not the case. In this country's battle with terrorist it would not be wise to assume because there has been a capture of 50% of those at fault, being captured in different areas, that the terrorist problem is resolved in spite of not capturing the remaining 50%. That would be naïve. It can also be reasonably deduced that hiding under other authorities or entities would not diminish guilt.

The District Court is treating the NTEU as if it is operating under some "blanket" authority of the US Treasury or as a disguise. Thus, in it's Order is denying the plaintiff due process.

**Conclusion**

For the reasons, facts and authorities stated herein the plaintiff request this Appeals Court reverse the District Court's Order to dismiss.

## Certification of Service

The attached document was sent by certified mail to:

Clerk
US Court of Appeals for the DC District
Rm. 5423
E. Barrett Prettyman US Courthouse
Washington, DC, 20001

And by regular mail to:

Clerk
US District Court for DC
333 Constitution Ave, N.W.
Washington, DC, 20001

8/12/05
Date

Steven Ivey
Appellant