RECEIVED
AUG 1 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

Steven Ivey,

    Plaintiff,

    V.

National Treasury Employees Union,

    Defendant.

Civil Action No. 05-1147

**PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO DISMISS WITH RELATED CORRECTIONS**

1.    This motion is for opposition to the defendants' request for a dismissal of the plaintiff's complaint. The plaintiff has replied with corrections/facts and an amended complaint, with attachments, to further clarify and support his claims.

**CORRECTIONS TO DEFENDANT'S MEMORANDUM OF CLAIMS/FACTS**

2.    From page 1, Introduction, the defendant's assessment that the complaints stem primarily from the plaintiff's termination from the US Treasury is erroneous. The false, libel, and slanderous statements by NTEU Reps Lisa Porter and Angela Strong, attachment # 4, has been reported to

1

have taken place during the last week of March 2001. The plaintiff was terminated March 7, 2001 so thus the plaintiff was no longer employed at the IRS/Treasury center. The two NTEU Reps acted maliciously to discredit the plaintiff by provoking built in community prejudices while the plaintiff was a private citizen living in Virginia.

3.      The plaintiff had no knowledge of the extent of the NTEU's involvement particularly of attachments # 1, 3, and 4, until the plaintiff received them as part of the Treasury's investigation file 02-1135 in January 2003. Attachment # 1 states that the NTEU has no leverage to barter for an employee when the reason for termination is "poor rating" as claimed by the IRS/Treasury. Thus, no reason for Doug Van Buren to have been present, especially, since the plaintiff did not request his presents (see attached Steven Ivey Declaration).

4.      Page 2, as for the different claims and defendants to the related cases the NTEU should note that the Treasury has refused the amending of the NTEU as co-defendants. Further emphasized on page 3, at the beginnings of the NTEU's Summary of Argument, as not being responsible for Fifth Amendment violations because they are not a governmental agency, the NTEU is in fact a "labor organization" under the executive

branch of the federal government.

5.         The NTEU by the representation of Doug Van Buren co-operated to conspire with the Treasury to intimidate and coerce the plaintiff, as well as to following participate in the decision to terminate the plaintiff. This was done even though the plaintiff explained to Doug Van Buren that the plaintiff had reported violations of taxpayers' documents and made prior EEO complaints. In particular, from attachment # 2, with the statement written by Robert Hall, " .... you also told me that in the past you had encountered problems dealing with Ms. Mancle and you thought she picked on you and singled you out ...," Doug Van Buren clearly was aware of the problems reported by the plaintiff, initially and continuously. This statement represents a prohibited personnel practice. However, Doug Van Buren ignored all that the plaintiff reported and acting contradictory to the mission of the NTEU conspired with the Treasury to remove and discredit the plaintiff. In acting in such manner the plaintiff's Fifth Amendment Rights were violated. Once again, the NTEU had no reason to be present nor to participate, their presence was organized by the IRS/Treasury. Attachment # 3 further demonstrates the improper participation of the NTEU, Doug Van Buren. From the attached Declarations of Steven Ivey

3

the plaintiff did not request the presence of Doug Van Buren.

From attachment # 2, continued employment of the plaintiff is liberty interest. Implication of liberty interest is within meaning of Fifth Amendment. **Perry v. FBI** (1985 CAT Ill, 759 F 2d 1271, ALR Fed. 563). Critical comments contained in the confidential personnel files, not subject to public disclosure cannot infringe on individual's liberty interest. **Hewitt v Garlicky** (1986, CA9 Wash.) 794 F 2d 1373, 1 BNA IER Vas 753.

Consequently, the NTEU's argument that the plaintiff's claims are precluded by Chapter 71 of the Civil Service Reform Act, 5 U.S.C. §§ 7101 - 35 because they are violations of fair representation is erroneous because the NTEU acted with intent and malice in a very directed negative manner against the plaintiff. This represents more than simple neglect of duty, especially since the NTEU Reps acted against the plaintiff nearly a month after the plaintiff was employed at the IRS/Treasury, see attachment #4, and considering the plaintiff was terminated on March 7, 2001.

6. Provisions of Title 18 of United States Code concerns credibility of the NTEU Reps as witnesses. The activities governed by the statutes are the mechanics of the claims of the plaintiff. The NTEU and its

4

Reps have a liability, even vicariously liability, for libel and slander, . See Amended Complaint as further discussion of such Title 18 issues.

7.  Starting on page 3 with the third point of the defendant concerning civil rights violations, the plaintiff refers to attachment # 8, a decision rendered by the EEOC on October 14, 2003. The file, Treasury EOP TD 02-1135, contained the documents in question for this case, thus the EEOC has reviewed these issues, attachment # 8 is the result. Additionally, from attachment # 4, can be seen the continued discrimination occurring after the plaintiff's employment at the center, thus making those circumstances without EEOC review, because they were done to a private citizen living in Virginia. This action denotes harassment on the part of the NTEU and it's representatives beyond the plaintiff's employment with the Treasury. Therefore, the concerns of Title 18 U.S.C.S. are applicable.

Consequently, as long as the attachments presented herein are continuously used by the Treasury, for the related cases and as part of various files, the issues of discrimination and harassment continue, pushing the limitations further in the future. To date, the damage from the documents has affected the outcome of the related cases 04-0394, 04-0395, 04-0396, (Northern Georgia District), and 04-0214, (DC District), and to

further compound damages to the plaintiff.

8.      In the plaintiff's original complaint the court and defendant should exclude 18 USCS § 1341 (Mail Fraud). It is not an issue in this case.

## ARGUMENT

9.      The damages and claims of the plaintiff in areas of libel and slander, by nature are implied, thus, there is no direct explicit explanation needed of the plaintiff. Under FRCP, Rule 8 it is only needed for the plaintiff to state in simple terms what the claims are of the civil action. The plaintiff filing pro se should also be taken into consideration. Consequently, the plaintiff has attached a further amended complaint for clarity and other related claims.

10.     The NTEU's argument for the use of Civil Service Reform Act, 5 § U.S.C. 7101 -35, (CSRA); and the Federal Labor Relations Authority, (FLRA) has little, if any, application to the plaintiff's claims. First, from attachments # 8 and 9; and the related case in DC District, **Ivey v. OSC**, 05-0176, and in these the inclusion of Treasury EOP file TD 02-1135, has provided to these administrative agencies the issues presented concerning the NTEU and it's representatives involvement. From

**5 U.S.C. § 7121**, there is a choice of action given any employee for resolve of grievances which includes, as an option, these agencies. This choice is also given consideration to the NTEU's behavior and nature of associated grievances. In the provision, EEOC, OSC, and MSPB have jurisdiction, thus, paving the way for civil action in district court. From attachments # 6 and 7, the plaintiff attempted to contact the NTEU, February 2 and 22, 2005, but no reply was given.

      Secondly, since most of the allegations occurred in conspiracy with the Treasury there are aspects of Title 18 U.S.C.S. associated with the claims. These violations were committed prior to and under the investigations as conducted in and from the DC District. The NTEU, similarly, was aware that the plaintiff had reported violations of prohibited personnel practices in the DC District of the OSC, DOJ, and the Treasury Inspector General prior to the influential incidences of the NTEU starting March 5, 2001, attachment # 2. However, the plaintiff has stated in the related cases that he reported to the IRS/Treasury on February 20, 2001, that he had reported violations to DC and was seeking legal counsel. The damages to the plaintiff were/are incurred in the DC District. This makes the DC District jurisdiction proper.

11.        The incident of March 5, 2001, attachment # 2, the NTEU, thru Doug Van Buren, demonstrated the intimidation to make the plaintiff sign a false, unofficial statement that would not only void the plaintiff's attempt to gain relief for reported violations but to incriminate the plaintiff. Since some of the violations reported by the plaintiff were the altering of taxpayers' documents, the NTEU was encouraging the plaintiff to negate corrective justice for the US Treasury and was perpetuating, with the US Treasury, the improper prosecution of the plaintiff for reporting the violations. This demonstrates the NTEU's improper involvement in the plaintiff's efforts for relief, that goes beyond simple duty neglect but in a determined negative direction. Since these reported violation occurred and administrated in the DC District there is an established jurisdiction.

12.        In particular, Doug Van Buren, union steward, knew of problems with Kelly Mancle (attachment # 2) beginning in February 1998, because he and the plaintiff spoke about them. However, the NTEU did not consider this pattern of behavior on the part of the IRS/ US Treasury. Doug Van Buren along with Robert Hall/ IRS coerced the plaintiff to sign a false statement and discouraged the plaintiff from competitive employment in the face of reported allegations. This perpetuates discrimination and

harassment of the plaintiff. The defendants were not acting merely through a "breached duty of fair representation"; they were acting in a decisive negative direction towards the plaintiff. Hence, the inclusion of Title 18 claims because these statutes involve discrimination and harassment in the process of the alleged claims. From the resulting effects to the plaintiff there is a course of action for damages.

13.     Given **FR of Evidence § 406** - Habit / Routine Practice, the defendants made repeated actions of the same violations of making and encouraging the plaintiff from competitive federal employment, discrimination, harassment, and Rights violations. This fact is even more significantly demonstrated by the circumstances of attachment # 4, the alleged phone call, because it was after the plaintiff was employed and living in Virginia. It was used repeatedly in the various related cases as submitted by the US Treasury in support of its defenses. The plaintiff was first aware of this document in January 2003 when attachment # 4 was used in the Treasury EOP file TD 02-1135 for EEOC processing. Statutes of limitations would start at this date and, since the Treasury has used the document, as well as the others in question, the issues of limitation would be calculated from the last use of the documents. The most recent use was

9

during 2006 for the related cases. What is a relative factor is that the call for the NTEU was in Georgia but the plaintiff was in Virginia; different limitations for different states. The day of the call in controversy was a Thursday or Friday. From attachment # 5, the plaintiff's phone bill for the period, can be seen that his only calls made over the weekend to Georgia, Saturday, March 31, makes the dates of Thursday and Friday, March 29 and 30. From the phone bill there were no calls made on those days or at least not to Georgia. There would naturally be continued argument on the part of the defendants in this matter, but the NTEU bares the burden of proof for making such a report. To date there has been no proof offered, and there won't be because the plaintiff made no such call.

The documents was used in related case <u>Ivey v. US Treasury,</u> 04-0214, DC District, in which their relation to the Privacy Act were reviewed. The DC District, thus, had jurisdiction over the case and the documents. With the remanding of the present case herein as reasoned by DC Appeals, o5-5444, of separate from that of the US Treasury, the review of DC District's determination of the documents comes into question. This is because from attachment #2 there is the illegal inclusion of the plaintiff's social security number being given to an outside entity, the NTEU, it is a

10

violation of the Privacy Act, **5 USCS § 552a**. Similarly, with the inclusion of attachment # 4 without the verification/ affidavits or proof in support nor affording the plaintiff opportunity to dispute and defend, results in a violation of the Privacy Act, as well. The adverse effects on the plaintiff were intentional and willful, in a negative direction and the pattern is established.

14.    Because the defendant is claiming exclusive issue of administrative procedure through the **CSRA**, the **FLRA**, and **Title VII** of the Civil Rights Act it is acting not as a "labor organization". Combined with the above explanation the NTEU acting in negative direction towards the plaintiff and the violations of Title 18 USCS involved, shows intent to participate in intimidation of the plaintiff along with the US Treasury so as to violate the plaintiff's Fifth Amendment Rights and aid in the hindrance of justice for the plaintiff. When the speech of the NTEU tended towards coercion rather than information, the NTEU can not be afforded protection as under more normal circumstances.

The NTEU and its representatives can not use the claim of "not a government actor" and /or a cloud of governing procedures to violate the Constitution under such means as "color of law". The NTEU was acting in

a manner consistent with a government agency, thus raising issues of "color of law," both in question as the NTEU and/or the US Treasury. Given the NTEU's reasoning it is presenting itself with a resulting Right/authority to violate the Constitution. In order to show that private persons were acting "under color of state law" it is not necessary to allege that action taken was authorized by state; however, facts must be stated showing that defendants were clothed with authority of state and were purporting to act thereunder. **Sykes v. California (Dept. of Motor Vehicles)** (1974, CA9 Cal) 497 F2d 197.

The coercion of the plaintiff from competitive employment and accompanying incrimination, constitutes liberty interest of the plaintiff. Subsequently, implication of liberty interest is within meaning of Fifth Amendment. **Perry v. FBI** (1985 CAT Ill, 759 F 2d 1271, ALR Fed. 563).

With regards to **18 U.S.C.S. § 1001** and the attachments #2, 3 and 4, it follows that, critical comments contained in the confidential personnel files, not subject to public disclosure cannot infringe on individual's liberty interest. **Hewitt v Garlicky** (1986, CA9 Wash.) 794 F 2d 1373, 1 BNA IER Vas 753. This is further demonstration of a violation of **5 USCS § 552a.** Additionally, allegations of wrongful dissemination of

information harmful to reputation of former governmental employee combined with denial of re-employment in government job states compensable due process violation. **Bastel v. Federal Aviation Administration** (1984, App DC 223 US App DC 297, 725 F 2d 1403). During the administrative procedures the US Treasury stated that they would not reinstate the plaintiff.

15.     Person who permitted another to make out and file false income tax return in order to obtain refund of fictitious overpayment of income taxes could be convicted as aider and abettor under **18 USCS § 1001**. **Driver v. US** (1952, CA 5 Fla) 199 F2d 860, 52-2 USTC ¶ 9548, 42 AFTR 866. To this, the plaintiff has included **18 USCS § 1001** to address the actions of Doug Van Buren, Lisa Porter, Angela Strong, and as of yet unidentified supervisor, as aiders and abettors. This is for the claims concerning the unauthenticated documents. The resulting effects to plaintiff were to discredit him and assist the US Treasury to cover up the plaintiffs reported violations to taxpayers' documents and violations to the plaintiff. In prosecution for violation of **18 USCS § 1001** by filing false customs export declarations, aiding and abetting is proved if defendant voluntarily gave false information or participated in plan such that it was foreseeable

13

that false information would be used in statements made to government agencies in furtherance of plan. **US v. Beck** (1980, CA 7 Ill) 615 F2d 441.

The US Treasury perpetuated the use of the documentation from the NTEU, which is separate charge form the fact that the NTEU formulated the false documentation, initially. The effect of this process still negated the credibility of the plaintiff and to negate justice, through conspiracy. When there was substantial overlap between parties involved in each separate action, and each objective was consistent with overall objective, only one agreement was made and each objective was means to achieve overall purpose. **United States v Hubbard**, (1979, DC Dist Col) 474 F Supp 64, 4 Fed Rules Evid Serv 1076. This is, also, in demonstration of the use of "color of law".

16.     From the above the issues of conspiracy, there is significant reason for the inclusion of both **18 USCS § 241** and

**18 USCS § 242. However,** depending on the defense of the defendants, the first concerns an agreement but the later, does not.

17.     For the associated issues of Title 42, the plaintiff offers the following with consideration given to the fact that operating and/ or conducting business on federal property is acceptance of governing by

federal regulations, statutes and laws. Similarly, any violations in and to the district of a federal investigation, for the present issues, in DC District, are governed by that federal district.

The plaintiff being a white male and the nature of the libelous and slanderous content of the documentation in question combined by those being submitted by females of un-specified race there is an issue of discrimination based initially in gender. The reported discrimination and harassment of the plaintiff with related cases against the US Treasury came from females and blacks, in particular.

The conspiratory actions of the NTEU and it's reps assisted the US Treasury in the perpetuation and denial of discriminatory claims with the US Treasury. This conspiratory effect translated to the investigations of the Inspector General of the Treasury, the DOJ, the OSC, the MSPB, and the EEOC, contributing to the effect of denial of due process; all of which were in the DC District.

A.      **42 USCS § 1981** for the plaintiff is used to deal with giving evidence; the security of person and property; and to be protected from impairment from non-governmental discrimination. These apply to the plaintiff's claims, especially wherein the defendants' claims of being a non-

governmental entity. Additionally, **42 USCS § 1981** is proper substantive basis for claim of redress under **42 USCS § 1985(3)**. <u>Witten v. A.H. Smith & Co.</u> (1983, DC Md) 567 F Supp 1063, 32 BNA FEP Cas 614, 33 CCH EPD ¶ 34254.

**B.**     **42 USCS § 1983** - Civil Action for Deprivation of Rights are applicable because harassment is actionable under **42 USCS § 1983** as violation of Equal Protection Clause and, also, redress for Constitutional violations.

**C.**     For **42 USCS § 1985** the plaintiff has amended the complaint as per F.R.C.P. Rule 15.

**D.**     **42 USCS § 1986** covers actions for neglect to prevent conspiracy and the resulting harm to plaintiff. This contributes and gives rise to a course of action.

**E.**     The inclusion **42 USCS § 1988** and **42 USCS § 2000e** is for the purposes of rights of action, fees, and related cost.

## CONCLUSION

**18.**    The NTEU and it's representations participated in the above on a voluntary basis, the plaintiff did not request them. This is contradictory to

the plaintiff to gain assistance from the NTEU prior to the plaintiff's return to the IRS/Treasury February 20, 2001. Thus, the defendant's claim of the actions being a resulting violation of "duty of fair representation," is not proper were the defendant went to greater extents to slander and discredit the plaintiff in conjunction with the US Treasury.

The actions of the defendants has been used extensively through administrative and judicial processes, thus compounding the negative effects on the plaintiff and justice.

As an informant the plaintiff brought attention to violations to taxpayers documents, this is a reasonable option for a federal employee under the circumstances. The NTEU is stating that in spite of that, the plaintiff can not raise issues of Title 18 for justice, particularly for the plaintiff, himself. Title 18 issues affect concerns of "public interest" and "public concern" because they generate "public controversy." The NTEU in violation of those related statutes violate statutory and common laws. These statues concern credibility of the NTEU and it's representations and compounds damages of credibility and reputation of the plaintiff. Consequently, affecting the attention to correction of the US Treasury through the related cases.

17

A question to ask here is that does the NTEU think the EEOC would come to some different conclusion by redressing the issues presented here, that were the same documentation of the Treasury?  The issues of harassment and discrimination are elements of Title 18 allegations.  Even if the issues can not be directly resolved for the case herein, they Title 42 and Title VII issues will need to be examined.  Because these actions were committed in the jurisdiction of DC, jurisdiction is proper in DC District.  The EEOC is not proper venue for action committed while the plaintiff was a private citizen.  The NTEU does not have immunity or procedure privilege for the above issues presented.   This fact governs Constitutional issues even more so.

The NTEU and its representatives are trying to have it both ways, they are using the testimony as sworn statements but then it is not verified or supported by affidavits.  They wish to be considered a "labor organization" with immunities under procedure regulations exclusive to the CSRA and the FLRA, but then act in a "governmental" agency such that they can violate the plaintiff's Rights; assist the US Treasury in the in the denial of due process for  commission of taxpayers' violations; and participate in conspiracies based in discrimination and harassment.  This in t

18

contrast to the fact that the above issues disqualify them for such procedural protection. Consequently, when the NTEU and its reps cease to be a "labor organization" by operating on federal property it is bound by federal regulations and the jurisdiction established by federal administration, with the OSC, MSPB, and EEOC it is the DC District.

From the above replies to the defendants' motion to dismiss either separately or combined the Court should deny such motion to the defendant, Amend the Complaint as attached. To further this denial of dismissal attention should be given to the fact that requirements of due process limit court's exercise of its inherent power to dismiss action when party has willfully deceived court and engaged in conduct utterly inconsistent with orderly administrative of justice, and dismissal is permissible sanction only when deception relates to matters in controversy, and because dismissal is harsh penalty, it should be imposed only in extreme circumstances. **Wyle v R.J. Reynolds Industries, Inc**. (1983, CA 9 Cal) 709 F2d 585, 36 FR Serv 2d 1539.

19

# Certification of Service

The attached document was sent by certified mail to:

Office of the Clerk
US District Court for DC
US Courthouse
333 Constitution Ave, N.W.
Washington, DC, 20001

And regular mail to:

Gregory O'Dunden
NTEU
1750 H Street, NW
Washington, DC, 20006

8-14-06
_____
Date

_____
Steven Ivey
Plaintiff