UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVEN IVEY,

      Plaintiff,

                                              Civil Action No. 05-1147

V.

DEPARTMENT OF THE TREASURY,

      Defendant.

DECLARATION OF STEVEN IVEY

I, Steven Ivey, in lieu of an affidavit and as permitted by **28 USC 1746** declare as follows from personal knowledge and belief:

1. I am the plaintiff acting pro se for this case.

2. I have never met; spoken with; nor was introduced to Lisa Porter (NTEU Rep) or Angela Strong (Union worker) at any point during or after my employment at the IRS/Treasury, Doraville Processing Center. Consequently, I have no knowledge of their job at the US Treasury, if any.

3. Since the Union was improperly involved in the March 5, 2001 violation of my Fifth Amendment Rights I would, thus, not concluded that the Union could resolve problems with the US Treasury as the accusation of centered around March 29 or 30, 2001 implies.

4. For the referenced cases 04-0395 and 04-0396 in District Court for

1

    Northern Georgia the defendant, the US Treasury objects to the amending of the defendants.

5. For the referenced cases 04-0395 and 04-0396 in District Court for Northern Georgia the Court has refused to amend the defendants as requested by the plaintiff.

6. The time of the reported accusation for March 29 or 30, 2001, I was already in the process of registering complaints with the EEOC, DOJ and OCS, both initially and in continuance of pervious complaints.

7. In addition to not contacting the National Treasury Employees Union (NTEU) I did not contact the Fair Labor Relations Board. The entities I contacted though broad was/is still limited.

8. I did not make any such call as the Union, Lisa Porter, and Angela Strong stipulate in attachment # 4.

9. The calls made by me on attachment #5 list no calls made to the Atlanta area on March 29 or 30, 2001. The two calls as listed to Acworth, GA on March 31, 2001 were to a fellow employee Susan Karimi.

10. From attachment #3, I made no request to have any NTEU representative present at the March 5, 2001 meeting. This would have meant the I would had a prior knowledge of what the US Treasury had planned for me in regards to termination; to which I did not.

11. As a private person, the issue of "characteristically improbable" applies to attachment # 4 where I would not talk to someone I did not know about my personal beliefs.

12. I have attempted to contact the NTEU for explanation and/or denial of the issues of attachment # 4. There has been no verification, documentation, and/or record supplied by the NTEU concerning the accusations. The US Treasury makes no responsibility for the supplying of any verification or explanation to resolve the accusations.

13. Initial problems of harassment were started by a girl named Angela in

2

my unit. To avoid this person and her problems I moved and later went to another unit. However, for some reason for each subsequent placement, mostly selected for me, there was another Angela seated by me. The subsequent "Angela" would initiate some form of harassment or improper behavior. In review of attachment # 4 in suspiciously reminiscent of this practice started with the US Treasury and perpetuated by the NTEU. In hindsight I do not think there was any call made to the NTEU as claimed. It appears to be an attempt to discredit me and for that to be accomplished by an "Angela".

14. I was unaware of the NTEU's reports of me until the issues/reports where included in the US Treasury's EOP file 02-1135 as delivered to me in January 2003.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct in accordance with **28 USC 1746**.

_____          _____

**Steven Ivey**                                                  **Date**

3