RECEIVED
SEP 2 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

Steven Ivey,

    Plaintiff,

V.

                                      Civil Action No. 05-1147 EGS

National Treasury Employees Union,

    Defendant.

## OPPOSITION TO DEFENDANT'S MEMORANDUM & REPLY DATED SEPTEMBER 1, 2006

*(Reference attachments are from the original and continue, with the amended complaint.)*

### I. Issues of the Defendant's Memorandum dated Sept. 1, 2006

Initial contact of the plaintiff with the NTEU, February 1999, was met with a lack of duty that was discrimination based. It is one of the reason that the NTEU created the story of the phone call of attachment # 4, because as with the US Treasury, the NTEU is attempting to direct attention away from it's improper and, later, illegal activity, by discrediting the plaintiff. Since the NTEU's behavior mimics the Treasury there is a reasonable understanding that the NTEU was a participant in the prohibited practices of the Treasury, or turning a blind eye, such as mis-appropriating federal funds to preferred employees. This is significant because on

1

March 5, 2001, attachment # 2, Doug Van Buren/NTEU encourage the plaintiff to withdraw from federal employment in the face of reported prohibited practices and protected disclosures; against NTEU protocol. Why would the NTEU discourage a Treasury employee from reporting violations to taxpayers' documents? Why would it ask that same Treasury employee to sign a false statement that would have the effect of voiding established EEOC complaints and thereby incriminate himself?

The stipulations of Rule 8 state that the complaint be a simple statement of the claims. DC District has previously cautioned the plaintiff to following such procedure. Therefore, it should be understood that great detail is not included. Therefore, the NTEU is asking for dismissal prematurely. The NTEU is failing to understand that it's actions, the plaintiff's claims, were part of a federal investigation.

When the plaintiff describes areas of "failure of duty" it is to demonstrate that, other than initial contact in February 1999, all other NTEU involvement was not at the request of the plaintiff nor did the NTEU have a right to be present or participate. The representatives of the NTEU acted under "color of law" to interfere, intimidate, and discredit the plaintiff. In particular with attachment #4, the NTEU's action where towards the

2

plaintiff were as a private citizen. These circumstances establishes evidence based on the pattern of behavior for the NTEU as allowed by FR of Evidence § 406.

The NTEU's argument is improper as it does not explain or reason why and/or how it had a right to be involved. The plaintiff did not request any representative, such as Doug Van Buren, to be present at the March 5, 2001, meeting (attachment # 2). The NTEU through Lisa Porter and Angela Strong acted towards the plaintiff as a private citizen without providing verification as to the legitimacy of the accusations; no proof. One violation of this independent action was violation of First Amendment Rights. These reps were acting under the "color of law." It is not needed for the plaintiff to demonstrate that the NTEU had given them authorization to be involved but only that the representatives were acting under the authority of the NTEU, Sykes v. California (Dept. of Motor Vehicles) (1974, CA9 Cal) 497 F2d 197. This demonstrate co-operation between the US Treasury and the NTEU to conspire against the plaintiff. It raises the behavior of the NTEU to the level of "public interest" and "interest of justice." This area gives the plaintiff right of action past the level of self interest.

As cited by the NTEU in it's replies it is citing the CSRA and the FLRA as the plaintiff's only means of resolving grievances. The regulations of these, as well as those of the agencies, that the plaintiff used, the OSC, MSPB, and the EEOC, stipulate that only one of these can be used to seek relief, not multiple agencies. As given in attachments # 8 & 9, the plaintiff proceeded with the EEOC and MSPB. The plaintiff is still seeking review of the MSPB, particularly as newer prohibited practices have been discovered. This review would include the NTEU. Significantly, the remanding from DC Appeals was because DC District was under the impression that the NTEU was part of the defendants in the related cases with the Treasury. This can be asked of the EEOC and MSPB, because they reviewed the actions of the NTEU as involved with the US Treasury.

By attempting to use the CSRA and/or the FLRA as "blanket protection" the NTEU, and only path to relief, it is still acting under the "color of law" because it is erroneously presenting itself as having acted in accordance with NTEU regulations and federal regulations. The NTEU can not do anything it wants, anyway it wants, any time it wants, then run back under the CSRA and/or the FLRA claiming protection. The NTEU's actions are ongoing, the false reports of the NTEU are continuously being

4

used to harm the plaintiff. However, the NTEU has not denied the allegations, nor has it justified it's participation in the allegations or offered proof of it's statements. The CSRA and the FLRA were not enacted to allow a disguise of protection of the NTEU for unwanted participation and intentional harm. The same reasoning applies to there use in violation of the Constitution. The NTEU's own regulations do not allow for bargaining for termination of reasons cited by the US Treasury. To further, the NTEU violated statutes of Title 18 and 42 USC in the process of the plaintiff exercising First and Fifth Amendment Rights. 42 USCS § 1981 - Equal Rights Under the Law and 42 USCS § 1983 - Civil Action for Deprivation of Rights do allow for right of action. More importantly, the second division of 42 USCS § 1985 gives cause of action to any person injured in course of alleged conspiracy. Kelly v. Foreman (1974, SD Tex) 364 F Supp 1352; and section 3 of 42 USCS § 1985 protects right to due process. Denis v. Rhinelander (1985, WD Wis) 11 Media L R 2141. The claims are that the NTEU violated the plaintiff's First and Fifth Amendment Rights; it acted in a manner to harass and discredit the plaintiff in order to assist the US Treasury in the improper removal of the plaintiff without due process to reported prohibited practices; it restricted First Amendment Rights; it

5

created adverse effect to the plaintiff's reputation; it cause harm to related cases by the originating and inclusion of libel and slander which under federal investigations is perjury.  Congress did not intent for the CSRA and/or the FLRA to be the NTEU's "great enabler."

**II. Issues of the Defendant's Response to Motion to Amend**

In reply to NTEU's "Response to Plaintiff's Motion to Amend," *(being re-filed as amended complaint),* there is a contradiction. From Pg. 2, there is reference in the (2nd) paragraph to the fact that the NTEU is not a "state actor." However, in paragraph (1) the NTEU cites the use of state cases in which libel and slander were issues.  The cases cited concern state jurisdiction for libel and slander, not federal jurisdiction. Federal regulations would then be adjoined with review of Constitutional issues.  This, further, demonstrates the NTEU's is flip-flopping in order to avoid prosecution, an effect of acting under "color of law."  The adverse harm of the incident of attachment #4 is ongoing, because the US Treasury continues to use the false document to discredit the plaintiff and perpetuate First Amendment violations without the NTEU denying that the plaintiff is correct in it's errors.  The clock on the limitations would not start until the US Treasury stops using the false document.  Attachment #4 is part of

6

evidence for 6 of the related cases; being used without proof of it's occurrence. This problem effects jurisdiction because it was used in investigations and administrative procedures in the DC District. Consequently, the issues of perjury are involved.

### III. Conclusion

With the above and previous replies from the plaintiff there is justification for the refusal of the DC District to dismiss. Moreover, because the NTEU did not abide by it's on regulations and/or those regulating federal property, but merely, operating under "color of law" it would be in appropriate to dismiss. To , further, because claims of First and Fifth Amendment Rights are distinct from any other related claims it makes dismissal erroneous,  Ray v. Nimmo (1983 CA 11 Ala.) 704 F 2d 1480.

# Certification of Service

The attached document was sent by certified mail to:

Office of the Clerk
US District Court for DC
US Courthouse
333 Constitution Ave, N.W.
Washington, DC, 20001

And regular mail to:

Gregory O'Dunden
NTEU
1750 H Street, NW
Washington, DC, 20006

9-18-06
Date

Steven Ivey
Plaintiff