# UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF THE DISTRICT OF COLUMBIA

Steven Ivey,

**RECEIVED**

OCT 2 6 2006

  Plaintiff,

NANCY MAYER WHITTINGTON, CLERK **Civil Action No. 05-1147** *EGS*
U.S. DISTRICT COURT

  V.

**National Treasury Employees Union,**
  **et al.,**

  **Defendants.**

## PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO DISMISS AND MEMORADUM DATED OCTOBER 3, 2006

### INTRODUCTION

**19.**     In following from plaintiff's previous reply, dismissal would be

inappropriate because there exist the fact that DC District's prior dismissal

of the complaint as decide June 9, 2005, demonstrates the role of the NTEU

under the 'color of law". This is because DC District's pervious opinion

was that the issues presented, herein, were those of the plaintiff's related

complaints against the US Treasury, et al., which in turn means that

DC District is understanding that the NTEU was acting under and as the

US Treasury- the "color of law."

1

20.    In review of the October 3, 2006 Memorandum the defendants have not supplied any affidavits or evidence in support of a contrary position to the plaintiff's claims.  The defendants' failed to resolve (1) conspiratory actions with the US Treasury and it's employees against the plaintiff;  (2) justification for being involved in the plaintiff's termination proceedings while the plaintiff did not request them (attachments 1,2, & 3); and (3) the inter-winding of the alleged phone call (attachment 4) as a continuous source of harm to the plaintiff.

21.    The defendants' assessment of the timeline of the statutes of limitations does not given consideration to the fact that the plaintiff was not made aware of the defendants' collaborations with the US Treasury, et al, until he received the documents, attachments 1,3, & 4, in the US Treasury EOP file, 02-1135, during January 2003.  This file was compiled in the DC District.

    To further, the timeline is also constantly changing because the US Treasury continues to re-use the documentation and testimonies in question.  To this the defendants' have not provided any supporting documentation against the US Treasury for the use of the NTEU activities in question.  The defendants are not stating that the US Treasury, et al., is

2

wrong in it's inclusion of the actions of the defendants.   This is contrary to the mission of the NTEU which demonstrates, further, the "color of law" and the plaintiff's claims.

**22.**      From 19, 20, & 21, above the plaintiff has viable cause for action; and support for the denial of the defendants' Motion for Dismissal.

## CORRECTIONS TO DEFENDANT'S MEMORANDUM IN SUPPORT OF DISMISSAL

*( The following cites page numbers of the defendant's Memorandum and related argument , Oct. 3, 2006. Any references to paragraph numbers refers to the plaintiff's pervious reply with numbers 1 - 18; and this reply, beginning with 19.)*

**23.**      The defendants mis-reads the plaintiff's claims of libel and slander as to be part of his removal from the US Treasury employment. The plaintiff was not aware of the claim, attachments 3 & 4, until January 2003. It is not part of the plaintiff's termination, because it happen almost one month after the plaintiff was employed at the Treasury center.   It does not fall under the CSRA, as the plaintiff was the a private citizen, a taxpayer. A more correct resolve for the issue would include the regulations and procedures of the **Restructuring and Reform Act of 1998** (RRA 98). Under the RRA 98 the issues of the NTEU and associated defendants can be reviewed more properly.  The RRA 98 covers the issue of (1) the improper

3

involvement of the NTEU in the efforts of the plaintiff to bring corrections

to taxpayer violations; (2) corrections to Treasury department violations;

(3) the conspiratory effects of the NTEU with the Treasury that continues

throughout this case and the related cases against the palintiff; and (4) the

after employment actions of the NTEU against the plaintiff.

**24.**      Within the RRA 98 is an administrative committee, the

Centralized Adjudication Unit (CAU) which oversees the such issues as the

claims that the plaintiff brings herein.  However, because the US Treasury,

et al., did not properly process the plaintiff's complaints and termination the

RRA 98 was under-minded, in turn, under-minding proper use of the CSRA

for the defendants.  The CAU would have been an additional means of

handling the claims against the NTEU, because the NTEU was not acting as

a Union in the traditional sense, the "color of law."

**25.**      The defendants' stipulation, p. 6,  that their actions represents

simple neglect of duty is erroneous as a claim of the plaintiff.  The actions

of the defendants was intentional and willful so as to cause harm and

adverse effects to the plaintiff in assisting the US Treasury in discrediting

the plaintiff and for retaliation in order to avoid prosecution for reported

violations.  The plaintiff again asserts that he did not request any Union

4

involvement and did not in fact want them present.  Consequently,

defendants' referenced cases **Buesgena v. Coates** , 2006 U.S Dist. LEXIS

27383, *9 (D.D.C., May 9, 2006)  and   **Nat'l Fed'n of Fed. Employee,**

**Local 1453 and Crawford** , 23 F.L.R.A. 686 (1986) would not apply in the

present case.

**26.**      Continuing with p. 7, the defendants reference fair representation

as the sole domain of **5 U.S.C. § 7116** for resolve of the plaintiff's

complaints.  However, though initial claims of the plaintiff concern fair

representation, the claims characterized in discrimination run to deeper

issues of intentional harm, coercion, and withdrawal from competitive

employment  which could be more appropriately reviewed by

**5 USCS § 2302 (b)(4),(5), & (8) and the RRA 98**.

**27.**      From  **# 26** above, the issues of jurisdiction is raised since the

improper involvement of the defendants impeded investigations,  conducted

in the DC District, of claims not under the review of the CSRA.  This

establishes proper jurisdiction as the DC District.

**28.**      Beginning at p. 8, and for the defendants' remaining argument

the calculation of limitations is erroneous because it does not factor in when

the plaintiff first knew of the documents 3 & 4, as being January 2003; part

5

of the Treasury EOP file 02-1135; nor the fact that the actions of those documents is continuous without denial from the defendants' when requested, (attachments 6 & 7), and/or condemnation to the US Treasury. The results in sufficient reasoning to deny dismissal.

29.        At p. 10 the defendants address the allegations of First and Fifth Amendment violations.  As the plaintiff has stipulated the defendants were acting under the "color of law" as both the US Treasury and the NTEU in order to perpetuate the harm to the plaintiff.  This raises the question as to the US Treasury's role in allowing the defendants to assist and conspire with the US Treasury, et al., so as to achieve the resulting Constitutional violations.  Since the plaintiff claims that he did not request the defendants to be involved in termination areas, and, also, from attachment 1, which states that the NTEU has no bargaining right under termination for the reason claimed by the US Treasury; then the US Treasury had to solicit and allow the NTEU, et al., to be involved and, more importantly, the NTEU, et al., accepted the role.  This situation is significant because the plaintiff was defending taxpayers' rights and proper Treasury procedures, as seen with attachment 9.  This also points to administrative review of the NTEU's actions; would the MSPB and/or the EEOC come to different

6

conclusions as to the allegations if NTEU, et al., was captioned ?  Moreover, the CSRA/FLRA can adopt the decisions of the MSPB/EEOC and vice verse. This demonstrates as in the plaintiff's previous reply that these listed administrative agency have stipulations that a complainant can only use one or the other but not all.  This would also concern issues of, administrative and judicial, efficiency and contradictions.

**30.**        With related case, **Ivey v. Snow** , no. 06-0557 DC District, the allegations of Titles 18 and 42, pp. 11 - 19,  are for resulting criminal behavior, damages, and adverse effects to the plaintiff.   As with **#28**  above if the US Treasury allowed the NTEU the role of "Treasury" and the NTEU accepted such, then the allegations towards the Treasury would be, thus, be for the NTEU, (color of law both as the NTEU and US Treasury). Consequently, since the US Treasury failed to take corrective action as required, to which the NTEU was involved, does not mean the plaintiff has not suffered damages from the conspiracy to yield such effects.  A question to consider is that the overlap of allegations with this case and related cases could produce contradictions, because as with related cases where defendants were participants ,they could be accessories, however, for this case, *at this point*, the defendants could be dismissed from the charges.

7

This is not to suggest that the decision of DC Appeals. as the defendant references p. 3, is improper because the complete charges of the NTEU and the US Treasury have differences primarily because of government and non-governmental entity. The resulting assessment of effects and damages to the plaintiff would follow, similarly, because of restrictions afforded governmental agencies and the specific damages of the NTEU acting contrary to the mission of a Union, are different in regulation.

31.      From pp. 11 & 16, the concerns of conspiratory actions is discussed. The defendants' review is deficient in that it does not recognize that the differences between **18 USC § 241** and **§ 242** is that one is for more formal agreements, and, the other does not depend on such an agreement, more an "understood mindset." To further, it should be noted that both types were utilized because as stipulated in # **29 & 30**, the involvement of the NTEU was contrived with the Treasury, not the plaintiff. The resulting, attachment 4, was then initiated by the defendants, as a vice versa effect in conspiracy. For one case in point; the second division of **42 USCS § 1985** gives cause of action to any person injured in course of alleged conspiracy; **Kelly v. Foreman** , (1974, SD Tex) 364 F Supp 1352.

32.      At p. 20, the defendant addresses the plaintiff's claims of

8

retaliation in his amended complaint. This addition stems from the NTEU,

et al., actions towards the plaintiff as witness, informant, and filing a claim.

With **Gerakaris v. Champagne** , (1996, DC Mass) 913 F Supp 646, it is

improper to dismiss [plaintiff's] **42 USCS § 1985(2)** claim alleging

systematic campaign to threaten, intimidate, coerce, and prevent him from

testifying, because most reasonable means of ensuring statutory goal of

deterring interference with judicial process is to give standing to witnesses

and jurors, as well as to parties. Given attachments 1, 2, & 3, the

defendants participated in cocercion of the plaintiff in pursuit of allegations

of taxpayer and Treasury department violations. The continued improper

participation of the NTEU demonstrates efforts to disuade the plaintiff.

33.        For clarity, the plaintiff is bringing a claim of retaliation. As just

stated, there were efforts to intimidate the plaintiff from pursuing corrective

actions, hence the Fifth Amendment claims and retaliation from

attachment 4.   From a recent Supreme Court decision,

**Burlington Northern & Santa Fe Railway Co. v. White** , no. 05-259,

June 22, 2006, it was decided that retaliation is not confined to the

workplace. Attachment 4 demonstrates that the NTEU initiated such

retaliation, which in turn was perpetuated by the US Treasury so as to

9

discredit; cause harm to the reputation of; and intimidate; the plaintiff as a witness and claims filer. This happened after the plaintiff was employed with the Treasury, but was in the process of OSC/MSPB and EEOC investigations among others. The reason the plaintiff reserves the right to re-address as needed is because it may not be clear as to whether the Supreme Court intends for the decision to apply to the NTEU as a participant acting under the "color of law ;" or would need to review the facts before making its decision to the effects of the defendants actions; or this be resolved with the RRA 98; or some combination.

## ARGUMENT

**34.**        On p. 5, footnote #5, the defendants suggest that the plaintiff's claims of libel and slander are complex issues which could be excluded because of the CSRA. From paragraphs **30 - 32** , above, can be seen that the claims are involved because the defendants conspired to damage the plaintiff continuously. The attack to the plaintiff as a private citizen concerns issues outside of employment with the Treasury and any connection to the NTEU. The incident, attachment 4, involves different statutes which preclude any administrative review; just as one private organization against a private citizen. However, the implications of the

10

intentional harm do merit review by the RRA 98. It is, also, in need of

concern for retaliation because NTEU/ Doug van Buren would have realized

that when the plaintiff did not sign attachment 2, he and the NTEU were

going to be subject to investigation and disciplinary action.

Doug van Buren, further, from attachment 3, was contributing to the

removal of the plaintiff from employment through Human Resources (HR).

This would mean that there would or should have been a second notice to

Doug van Buren/NTEU, *(The first was during the meeting of attachment 2,*

*when the plaintiff informed van Buren of reported violations.)* concerning

the plaintiff in reporting violations, because under the RRA 98  HR is

mandated to have been informed of the plaintiff's activity of reported

violations.

As mentioned in attachment 3, Betty Burris was the HR

representative. Betty Burris as HR has denied any knowledge of the

plaintiff having reported any violations, but this claim is being challenged in

related case 06-0557, DC District, for perjury, and related cases. These

circumstances represent substantial factual evidence which the defendants

have not resolved in order to be granted dismissal at this point.

**35.**        Use of federal property means the regulations of the federal

11

government must be upheld, this would include the Constitution, even when not acting in official/ business manner. The Defendants were not justified in there presence during and after the plaintiff's termination with the US Treasury. They should not then have guaranteed expectations that the CSRA/FLRA is their "end-all" protector. Otherwise, the defendants would be trying to exclude the RRA 98, MSPB, and other equal resolves. The defendants would, in turn, be attempting to make the CSRA/FLRA their "blanket of authority" even after criminal activity, such as conspiracy. The defendants' activity extended throughout investigation of and to the DC District. For conspiracy at common law, it [is] not necessary to allege or prove overt act, but conspiracy pursuant to **18 USCS 371** requires proof of some act in furtherance of scheme. **United States v Pugh** ; (1977, ED Pa) 437 F Supp 944. Attachment 4 evidences the continuance of the manipulations of the NTEU, et al., and the US Treasury, et al., to discredit and intimidate the plaintiff from following through with filing grievances. Since the actions of the defendants was supplied to an investigative entities, the Treasury EOP and the MSPB, there exist efforts to deceive corrective measures in the DC District, as such, it [is] offense against United States to violate criminal provision of Code of District of Columbia;

12

**Arnstein v United States**, (1924) 54 App DC 199, 296 F 946. This is particularly, significant because there was hindrance of corrective action and protection of the plaintiff as the violations concern public interest. Dismissal would, therefore, inappropriate.

36.     The conspiratory actions of the defendants exist to date, because they have not denounced the US Treasury for the inclusion of the NTEU, et al., by means of affidavits and /or evidentiary support. What would also be apparent is that the NTEU would then have a resulting claim for civil action against the US Treasury, which it apparently is reluctant to initiate. It is improper for the NTEU, et al., to have the present case dismissed because it wants to remain in "bed" with the US Treasury. Thus, the defendants claims of time-barred dismissals are inaccurate.

37.     What the NTEU, et al., is doing is "straddling the fence" with the CSRA in one hand and the FLRA in the other, to be used as weapons to fight off the plaintiff's allegations. However, what the NTEU, et al., is not considering in asking for dismissal is that the fence is built by the taxpayers; initially, constructed with, and, consequently, held together by the Constitution. The CSRA/FLRA are proper jurisdiction tools for the NTEU but not when it ventures into unjustified areas by "teetering on the fence" so

13

as to have it both ways. The NTEU, et al., is attempting to use the derivatives of the Constitution to under-mind the structure it stands on, and violate the plaintiff's Constitutional Rights as part of defense to his and taxpayers' Rights. These circumstances fall under jurisdiction of the RRA 98 as well and authorities of retaliation protection. The defendants has not supplied definitive evidence, contrary to the plaintiff's claims to support proper dismissal for participation in Constitutional violations.

## CONCLUSION

**38.**      What is being demonstrated is that there is wide controversy in the facts and circumstances between the parties, from the above and previous correspondences. This does not established sufficient grounds for the defendants to be granted dismissal. The attempts of the NTEU, et al., to gain dismissal follows similarly to that of related case, **Ivey v. Snow**, no. 04-1377, in DC District, (transferred to N. GA District, no. 05-1150), in which dismissal and/or change of venue was sought. For the related case the procedures of proper termination of the plaintiff were reviewed. That case, involves the procedures of the RRA 98 as having not been followed correctly. For the present case the same criteria would apply to aspects of the NTEU's, et al., unjustified presence in the plaintiff's

14

termination. Similarly, to that related case, this case should not be dismissed.

39.    The defendants, have mis-read the timeline for the allegations; have not supplied sufficient affidavits and/ or evidence to support dismissal; have not denounced the US Treasury as being wrong with more significant condemnation; has not considered all possible routes of administrative review; nor has considered how each administrative entity works in conjunction with any other; and mis-reads the facts that the defendants efforts to discredit and harm the plaintiff extended beyond the "normal" connection to the NTEU; thus, dismissal should be denied and the proper jurisdiction recognized as the DC District.

# Certification of Service

The attached document was sent by certified mail to:


Office of the Clerk
US District Court for DC
US Courthouse
333 Constitution Ave, N.W.
Washington, DC, 20001

And regular mail to:


Gregory O'Dunden
NTEU
1750 H Street, NW
Washington, DC, 20006


_10-23-06_
Date

Steven Ivey
Plaintiff