RECEIVED
NOV 1 6 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

Steven Ivey,

      Plaintiff,

      V.

National Treasury Employees Union,
  et al.,

      Defendants.

Civil Action No. 05-1147 EGS


**PLAINTIFF'S REPLY TO DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT DATED NOVEMBER 1, 2006**

## INTRODUCTION

**40.**      The National Treasury Employees Union's Motion for Extension of Time, August 18, 2006, was granted freely by the DC District. The plaintiff offered no opposition. Now are the defendants suggesting that DC District to not have the same consideration to the plaintiff? (p. 1 Def. Mem. 11/01/06).

**41.**      The NTEU, et al., with their most recent Motion to Dismiss is attempting to have the present case to fit their referenced case such as with

1

it's July 25, 2006 attachment to it's "Memorandum of Points and Authorities," case **Buesgens v. Coates, et al. and Kelley**. However, the plaintiff's claims involve more issues than presented in this referenced case. The defendants rehash the defense of CSRA, p. 2, stating that the plaintiff's claims are the supposed violation of "its duty of fair representation." There are obvious acts of the defendants from such neglect of duty, in turn, form a pattern of behavior of the defendant in different cases;

**FR of Evidence § 406**. This pattern continued by assisting the US Treasury in the denial of First and Fifth Amendment Rights, of the plaintiff; as with March 5, 2001, attachments 2 & 3, and, later at the end of March 2001, attachment #4. By the time the plaintiff had returned to the US Treasury for the 2001 tax season, February 20, 2001, he had reported prohibited practices and EEO complaints to the TIGTA, OSC, DOJ, and Congress. Therefore, the actions of the defendants were directed towards the plaintiff in his capacity of being an employee, and informant, in which the NTEU, et al. was acting under the "color of law." This would later continue when the plaintiff was a private citizen and witness, attachment #4. The CSRA does not completely apply nor absolve the defendants of all these levels of damage to the plaintiff from improperly

2

assisting the US Treasury in wrongful termination; depriving of rights, civil and Constitutional; and damaging the plaintiffs reputation. Accordingly, the " Civil Service Reform Act of 1978 has not superseded race discrimination remedies afforded by Title VII," **Scipio v Weinberg** (1985, ND Ill) 622 F Supp 47, 41 BNA FEP Cas 927. Additionally, because unconstitutional claims represent distinct issues beyond any claims of [discrimination] it is inappropriate to dismiss, **Ray v. Nimmo** (1983 CA 11 Ala.) 704 F 2d 1480. The **Restructuring and Reform Act of 1998** (RRA98) equally applies to the plaintiff's claims. And has been amended.

### CORRECTIONS TO DEFENDANT'S MEMORANDUM IN SUPPORT OF DISMISSAL DATED NOVEMBER 1, 2006

*( The following cites page numbers of the defendant's Memorandum and related argument, Nov. 1, 2006. Any references to paragraph numbers refers to the plaintiff's pervious reply with numbers 1 - 18; 19 - 39 and this reply, beginning with 40.)*

42.    To further, defendants' discussion, pp. 7-9, that the plaintiff's claims are not substantial, "court properly found unions liable under Title VII (42 USCS § 2000e et seq) and **42 USCS § 1981**, in action by employees asserting racial discrimination claims against their employer and unions, where facts showed that unions discriminated on basis of race by

3

way in which they represented employees, in that (1) they failed to challenge discriminatory discharges by employer of probationary employees, even through provision in collective bargaining agreement which stated that neither party would discriminate on racial grounds protected this group of employees, (2) unions failed and refuse to include assertions of racial discrimination and grievances that also asserted other violations of collective bargaining agreement, while knowing that employer was discriminating in violation of agreement, and (3) they tolerated and tacitly encouraged racial harassment. "**Goodman v Lukens Steel Co.** (1987) 482 US 656, 96 L Ed 2d 572, 107 S Ct 2617, 44 BNA FEP Cas 1, 43 CCH EPD  37099. As the defendants have asserted their behavior was a violation of "its duty of fair representation," but their actual behavior goes beyond this simplistic description. *( The following, 43. 44. & 45, offers further explanation.)*

43.     For (1), the plaintiff alleges that it went beyond this level into a very directed negative effect to the plaintiff. This demonstrates a failure to challenge the issues and effects of discriminatory termination of the plaintiff. This resulted in undue harm to the plaintiff in that the wrongful termination was processed with the NTEU's negative assistance. Not

4

acting properly points fault at the NTEU, et al., for participating and/or accepting the prohibited practices of the US Treasury. This additionally, discredited the plaintiff for MSPB review, and subsequently, opinion of Appeal Court for the Federal Circuit and DC District, case 04-0214. It continues to contribute to excessive litigation.

**44.**     For (2), in having been told of the US Treasury, on March 5, 2001, prohibited practices and EEO violations to Doug Van Buren/NTEU as the reason for terminating the plaintiff, the NTEU did not recognize such claims but coerced the plaintiff to sign a false document, attachment # 2. This document is not an official US Treasury document and improperly contained the plaintiff's social security number. Attachment #4 compared to attachment #10, the official RRA98 form in which there is no requirement for a ss#. Because of reported allegations this is the required form that was to be used.

To further, attachment #1, states that the NTEU does not have collective bargaining rights for termination under the claims of the US Treasury, for "rating." This demonstrates improper involvement of the NTEU et al. as would have been know to the NTEU. The plaintiff, as the defendants have asserted, contacted the NTEU beginning in February 1999

5

with complaints of EEO violations, thus the NTEU had a history of being informed. This created adverse effects to the plaintiff of discrimination and harassment to the plaintiff by the NTEU, though at present are not immediate issues, but since the issues of Title 42 claims are rooted in discrimination, they are relevant; **FR of Evidence § 402**. The NTEU's failure to respond properly discredited the plaintiff and improperly influenced the related investigation cause further litigation and cost.

**45.** For (3), the evidence of the individual claims and from their combined effects, demonstrates the failure of the NTEU to uphold it's mission. Accordingly, the plaintiff has provided substantial support for claims of encouraging the US Treasury in discrimination and harassment of the plaintiff. The NTEU, et al., compounded the adverse effects of failure to take corrective actions which resulted in biased determinations of the originating claims; discrediting the validity of the plaintiff as a witness; extended processing burden; and personal injuries from improper interference and repeated character discredits.

**46.** The defendants p. 3 narrowly defines the plaintiff's claims as those of mere breaches of duty of fair representation. The plaintiff refers to the original complaint, amended complaints, and reply opposition as

explanation of the claims.

**47.**         In reference to the time-barred issues of the libel and slander claims, as with attachment #4, the plaintiff clarifies that these claims are continuous to date. This attachment was used to attack the plaintiff's character and credibility for MSPB proceedings; case 04-1135, Appeals Court for the Federal Circuit, and related cases to date. The effects of this document were not fully realized in related case 04-0214, DC District, and now raises issues of validity of the final decision. The US Treasury is using this document without and in defiance of the plaintiff objections.

Such attachments as #4 from the EOP file were not know to the plaintiff until January 2003, and was in review of the EEOC until January 2004. The actions of libel and slander did occur on federal property over state lines, as Lisa Porter and Angela Strong were in GA and the plaintiff in VA. Thus, limitation would be those as from it's repeated used and with regards to felony regulations. To note, as for the defendants assertion that the plaintiff never filed the claims of libel and slander until September 2006, these claims were amended which then shares the origination date. The plaintiff has objected to there use as stipulated by the US Treasury, other than to demonstrate intentional harm and/or impeachment.

The NTEU, et al., in it's reply memorandums has <u>now</u> denied the claims of the plaintiff but have not attached affidavits in support. The US Treasury did, however, complete such affidavit stating such libel and slander, which as stated before, continues to use it as support against the plaintiff's claims. This conflict creates a serious credibility issues of perjury, because between the US Treasury and the NTEU, who would then be truthful? The plaintiff in this and related cases has stated that both the US Treasury, et al., and the NTEU, et al., have both commited perjury, to federal agencies in the DC District. One or the other or both would have to be lying. In addition, there has been no proof provided to the alleged call to the NTEU actually occurred. This is a controversial issue, the actions are libel and slander, but the motive points to retaliation. Therefore, since not resolved, these circumstances supports denial of dismissal.

**48.** Given #47 above and p. 9, the issue of retaliation is addressed. When the plaintiff did not sign, attachment #2, after he was coerce improperly by the Doug Van Buren/NTEU, he had to realize what would follow and that he would be under disciplinary action. Doug Van Buren in being improperly involved, as the plaintiff has previously stated, was a violation of the plaintiff's First and Fifth Amendment Rights, see #41

above. The behavior of the NTEU in this matter is a violation of the **RRA98**; the anti-retaliation section of **42 U.S.C. § 2000e**; and **18 USCS § 1513** - Retaliating against an Informant. Because the NTEU did not take action to prevent or to assert discrimination and harassment of the plaintiff there is substantial conclusion that the NTEU would be assisting the US Treasury in prohibited practices and EEO violations. The end effects on the plaintiff were/are damages because improper termination and discrediting him as a witness; **Gerakaris v. Champagne** (1996, DC Mass) 913 F Supp 646. The plaintiff's reference to **42 USCS § 1985(2)** is also applicable, it is for the purposes of protecting the validity of witnesses from harm of intimidation, coercion, and deformation. There is controversy involve with the issue of retaliation as to the extent and to what role of the plaintiff was attacked.

49.     Through the course of the plaintiff seeking relief Title 18 claims are part of the mechanics of the damages direct towards the plaintiff; referenced p. 7. These concern the issues of conspiracy between the US Treasury and the NTEU. The effects of conspiracy is actionable under **42 USCS § 1985(1)** ; **Windsor v. The Tennessean** (1983, CA6 Tenn) 719 F2d 155, 69 ALR Fed 896, reh den (1984, CA6 Tenn) 726 F2d 277 and cert

9

den (1984) 469 US 826, Ed 2d 50, 105 S ct 105.

**50.**         The defendants' argument of Title 42 claims, pp. 7-9, is incomplete in relation to the plaintiff claims. The NTEU states inaccurately that all the claims of Title 42 are centered around the plaintiff's termination. However, Title 42 claims exists during the plaintiff's employment, termination process, and after employment as previously discussed.

**42 USCS § 1985**; Conspiracy to Interfere with Civil Rights can be seen by the improper involvement of the NTEU, et al., when they were not requested or had a right to be involved. The general rule was that when the NTEU was requested, they failed to comply but when not request they interfered.

    Within Title 42, depending on which section of conspiracy, it is not necessary for there to be a formal argeement because there is present a common end. The substantial fact is the inaction of the NTEU where it is it's mission to so. This follows similarly to the US Treasury. For instance, with attachment #2,3&4, the NTEU, in less than one month, was active and aggressive in prosecuting and harming the plaintiff, but this, contradicts the previous two year period of complaints of the plaintiff when the NTEU was inactive.

51.     The plaintiff with the attached "Additional Amended Complaint" has added the areas of concern for the record, defendants' claim p. 10. These additional complaints were argued in pervious plaintiff replies as well the herein.

## ARGUMENT

52.     There exist areas of controversy surrounding the issues. Credibility is also in question. The NTEU, et al., has not eliminated these doubts. These circumstances have given cause for examination of past administrative and judicial review. These circumstances involve public interest and interest of justice.

53.     Jurisdiction is established in DC District because the improper involvement of the NTEU occurred during reporting violations and, subsequent, investigations from agencies in DC District.

54.     Federal property require regulations thus department rules; OPM regulations; and statutory provision such as RRA98 and 5 USCS § 2302 (b)(4),(5), & (8); as argued and amended. The complaint of the alleged call, if the NTEU wants to treat it as such, needed to follow the RRA98 procedure for both the NTEU and the US Treasury.

55.     From p. 3, footnote #3, the NTEU denies "it acted inappropriate in any way towards Ivey," however, this admission should be accompanied by affidavits. The plaintiff's claims arise from sworn testimony of the US Treasury and were used for administrative decisions, as well as the subsequent judicial proceedings. This would mean that the US Treasury and/or the NTEU was/is lying to the OSC; MSPB; EEOC; DC District; No. GA District; DC Circuit; Eleventh Circuit; significantly, under-minding due process. A particular example was that the plaintiff was terminated improperly.

56.     The inaction of the NTEU, et al., as argued by the plaintiff is evidenced by the fact that if it is not true as the NTEU claims, then why not address the allegations with the US Treasury? This is particularly an issue, since the alleged racial phone call to the NTEU involves the use of built in prejudices.

57.     The alleged racial phone call also raises other questions. One is that, why would the NTEU reps go to Robert Hall who in turn went to his supervisors? Why won't the NTEU reps go to the supervisors directly? Secondly, given the plaintiff's claim that his First and Fifth Amendment Rights were violated in an effort to have the plaintiff incriminate himself

12

and sign away his Rights; the alleged racial phone call has the same effect. The alleged phone call as taken on face value would achieve the intended purpose of having the plaintiff sign away his rights by use of a contrived unofficial document. The pattern of the NTEU's behavior is evident, as it is for the US Treasury. This also concerns the issues of conspiracy. This goes back to the NTEU having liability issues against the Treasury; why not face those facts?

**58.** The defendants' stipulation as being a private actor is not a statement of qualified immunity.

**59.** What has to be considered is the extent and areas of the issues of libel and slander. The defendants are citing State limitations but the incident occurred on federal property and crossed state lines. It was directed at the plaintiff as an former employee, informant, and witness. This establishes different statutes with differing criteria, the NTEU has not resolved these without pointing to controversy and credibility issues. Not one particular statute would apply fully to all.

**60.** Union which intentionally avoids asserting discrimination claims on behalf of members against employers, ..., is liable for discrimination under 42 USCS § 1981; **Goodman v Lukens Steel Co.**,

(1985, CA3 Pa) 777 F2d 113, 39 BNA FEP Cas 658, 38 CCHEPD 35719. Additionally, 42 USCS § 1981 is proper substantive basis for claim of redress under 42 USCS § 1985(3). **Witten v. A.H. Smith & Co**. (1983, DC Md) 567 F Supp 1063, 32 BNA FEP Cas 614, 33 CCH EPD ¶ 34254. The actions of the defendants represent discrimination and harassment as was established by the US Treasury of which the NTEU, et al., failed to recognize properly and to respond accordingly. This genera rated adverse effects to the plaintiff in additional litigation, character assassinations, and due process violations for relief.

**61.** To further, former employee's 42 USCS §1981 claim against union need not be dismissed, because union that interferes with private contractual right to arbitrate may incur liability under 42 USCS § 1981. **Quarles v Remington Arms, Co**. (1994, DC Conn) 848 F Supp 328. The defendants have not fully relieved doubts as to the plaintiff's valid claims.

**62.** Given the defendants involvement in the plaintiff's termination and after employment, attachments and arguments as from the above, confers that allegations of wrongful dissemination of information harmful to reputation of former governmental employee combined with

14

denial of re-employment in government job states compensable due process violation. **Bastel v. Federal Aviation Administration** (1984, App DC 223 US App DC 297, 725 F 2d 1403).

# Certification of Service

The attached document was sent by certified mail to:

Office of the Clerk
US District Court for DC
US Courthouse
333 Constitution Ave, N.W.
Washington, DC, 20001

And regular mail to:

Gregory O'Dunden
NTEU
1750 H Street, NW
Washington, DC, 20006

11-13-06
Date

Steven Ivey
Plaintiff

Appendix C

# Section 1203 Allegation Referral Form

Date allegation was received _____

**Complaint originator identifying information:** Request information below so that the complaint originator can be contacted for additional information, if necessary. If the complaint originator does not want to provide any personal identifying information, indicate "anonymous", collect as much information as possible, and refer them to the TIGTA Hotline number (**1-800-366-4484**).

☐ Taxpayer   ☐ Taxpayer representative   ☐ Employee   ☐ Other _____

| Name | Telephone |
|---|---|
| | |

Address

| City | State | Zip code |
|---|---|---|
| | | |

**Allegation information:** Below, write the name of the employee who allegedly committed the violation of Section 1203. If the name is not known, indicate "not known" and obtain as much identifying information as possible and data regarding the complaint in the space entitled "Summary of allegation."

| Name | Position |
|---|---|
| | |

Office

**Nature of misconduct or violation:** Indicate the specific code subsection for any alleged Section 1203 misconduct or other misconduct identifier, as appropriate.

Alleged Section 1203 violation(s):

☐ 1203 (b)(1) Willfully failing to obtain required approvals when making a seizure

☐ 1203 (b)(2) Providing sworn false statements in a "material matter" concerning a taxpayer

☐ 1203 (b)(3)(A) Violating the constitutional rights of a taxpayer or employee

☐ 1203 (b)(3)(B) Discrimination against a taxpayer or employee

☐ 1203 (b)(4) Falsifying or destroying documents to cover a mistake concerning a taxpayer

☐ 1203 (b)(5) Receiving a criminal conviction or adverse civil judgement for assault or battery on a taxpayer or employee

☐ 1203 (b)(6) Violating the Internal Revenue Code, IRS regulations or policies to retaliate or harass taxpayers or employees

☐ 1203 (b)(7) Willfully misusing Internal Revenue Code Section 6103 to conceal information from Congressional inquiry

☐ 1203 (b)(8) Willfully failing to file a tax return on or before its due date, unless it is due reasonable cause

☐ 1203 (b)(9) Willful understatement of federal tax liability, unless it is due to reasonable cause

☐ 1203 (b)(10) Threatening an audit for personal gain

**Summary of allegation:** Provide any additional information including the date(s) of incident(s). Use additional sheet(s), if necessary.



Attachment #10

**Originator Information:** The employee preparing this form should provide the following information.

| Name | Position |
|---|---|
| Office | Telephone |

### Section 1203 Allegation Referral Form processing instructions
Nothing in these instructions preclude employees from making direct referrals to TIGTA (1-800-366-4844)

1. **§1203 (b)(2),(4),(5),(7), and (10) conduct allegations** - These allegations require immediate referral to the Treasury Inspector General for Tax Administration (**TIGTA**) by telephone. Indicate the referral to TIGTA below and forward this form to the local Labor Relations office. The Labor Relations office should indicate the final disposition of this allegation below.

2. **§1203 (b)(3)(B) misconduct allegations** - Employees may initiate this form and refer allegations of sexual harassment to TIGTA. The Discrimination Complaint Review Unit (**DCRU**) will complete this form in all other instances that arise out of the EEO complaint process. If the DCRU refers a potential complaint to TIGTA, a copy of this form should be sent concurrently to the Labor Relations office. The Labor Relations office should indicate the final disposition of this allegation below. Taxpayer allegations of discrimination must be referred directly and immediately to TIGTA.

3. **§1203 (b)(1),(3)(A) and (6) misconduct allegations** - These allegations require referral to Division Level management or higher to determine whether a potential Section 1203 violation exists. If a Section 1203 violation exists, immediate referral to TIGTA is required with a copy of this form forwarded to the Labor Relations office. The Labor Relations office should indicate the final disposition of this allegation below.

4. **§1203 (b)(8) and (9) misconduct allegations** - Information regarding potential employee tax non-compliance should be entered on this form and forwarded to the Labor Relations office. The **Employee Tax Compliance (ETC)** unit will complete this form for employee tax non-compliance cases which indicate potential 1203 violations and refer the allegation to the Labor Relations office. The Labor Relations office will refer these allegations to management. The Labor Relations office should indicate the final disposition of this allegation below.

5. **§1203 allegations pertain to all managers, GS-15, Senior Executive Level, and Criminal Investigation** employees will be referred directly and immediately to TIGTA.

**Action/Disposition:** Please indicate the action(s) taken with regard to this allegation, including the date the action took place, and the name, position, office and phone number of the person taking the action. Indicate the final disposition if no additional action is to be taken. Use additional sheets if necessary. **The original or copies of this form should be forwarded to the Labor Relations office as each action is taken.**

| | Date |
|---|---|
| Refer to Treasury Inspector General for Tax Administration (TIGTA) | |
| Other action/disposition | Date |

| Name | Position |
|---|---|
| Office | Telephone |