Hall Robert M
To: Ferguson Linda C; Truss Karen D; Brown Brent E
Subject: Re: Steve Ivey

I had an interesting conversation tonight with Lisa Porter (NTEU Rep) concerning Steve Ivey.
He called the union office either Thursday or Friday and spoke to Angela Strong. He told her he was terminated because of his beliefs. She asked him what his beliefs were. He told her that he did not intend to take orders from any nigger or faggot. He asked to speak / meet with the president of the union.
This is all that we know so far, but I wanted to make you aware of what I heard.

Robert Maupin Hall

Chief, Section T-B

Data Conversion Branch

770-455-2528

Attachment #1

March 5, 2001, 2001

Steve Ivey

Steve:

This is a recap of the meeting I had with you in my office the week before last. You returned to duty February 20th at 6 p.m. You were instructed to report to the Data Conversion Conference Room at 6:30 p.m. for Refresher Training.

Kelly Mancle was the instructor for this class. Ms. Mancle made sure everyone had the proper supplies and materials that were needed for the class. According to Ms. Mancle, you continued to read a book and not pay attention thoughout the class. At one point, you got up and left and were gone for 35 minutes.

When I was made aware of this I instructed Ms. Mancle to have you report to my office. She told you to do this and you disappeared again. After about 10 minutes you came to my office.

You explained to me that you were a returning operator and that you didn't feel the need to sit in the class. You also told me that in the past you had encountered problems dealing with Ms. Mancle and you thought she picked on you and singled you out. I explained to you how important the Refresher Class is, and that I found it hard to believe that she was picking on you in front of the other employees.

At this point the class was almost over. You and I agreed that since you were not feeling well, you would go home and report to work the following evening.

Steve, as I explained to you last week, you are in class for a reason. Reading your book, not paying attention in class and leaving the classroom is unacceptable behavior, and will not be tolerated. According to the Rules of Conduct this is insubordination. Your latest Quarterly shows you are rated a "1" in Quality, and a "3" in Quantity. Your Courtesy Review from last week, showed you had 4 documents in error, out of 10. The purpose of the Refresher Class is to help reduce your error rate.

This is your third season, and you have always had an unacceptable quality rate. You are still on probation. After considering the facts that you have a very low accuracy rate and that you chose not to participate in the refresher course I have decided to recommend that your employment be terminated.

_Robert M Hall_
Chief, Section III-B
Data Conversion Branch

_employee refused_ Employee Sign and Date _to sign_
3/5/01
_RMH_

_Attachment #2_

Linda:

I discussed this case with you last week. This employee is the one who is rated a "1" in Quality and walked out of the training class because he thinks Kelly picks on him in front of the class.

He has had a high error rate since he returned this year. In fact, you can see that his quality never was very good and it continues to drop.

Doug Van Buren and I met with the employee for an hour tonight. Doug encouraged him to resign three times, but he refused. Doug told me that he thinks we should proceed to remove this employee as soon as possible. Betty Burris agrees with that.

I would like to expedite this if possible.

Thanks
Robert

*He's also the one who wanted to only have a white union steward represent him.*

Attachment #3

Agency-Wide Shared Services

As an employee, the appellant was covered by the collective bargaining agreement between the National Treasury Employees Union (NTEU) and Internal Revenue Service (IRS), however this agreement does not cover the termination action being appealed.

Cordially,

*[signature: Yvonne Woods]*

Yvonne Woods
Workforce Relations Consultant

Attachment #4

with his removal.[1] Because Ivey's claims all concern NTEU's representation of him in connection with his removal, they "amount to nothing more than an allegation that NTEU breached [its] duty of fair representation." Buesgens v. Coates, 2006 U.S. Dist. LEXIS 27383, *9 (D.D.C., May 9, 2006) (dismissing for lack of jurisdiction former federal employee's claims that union violated Title VII in representing him).[2] His exclusive remedy for such an allegation lies under Chapter 71 of the CSRA, and this Court, therefore, has no jurisdiction to consider his claims.

A union that is the exclusive representative of a bargaining unit of federal employees has a duty to represent all bargaining unit employees in a fair manner, without discrimination and without regard to union membership. See 5 U.S.C. § 7114(a)(1). A charge that a union has acted arbitrarily or in bad faith to the detriment of a member amounts to a claim that the union breached its duty of fair representation. See National Fed'n of Fed. Employees, Local



---

[1] NTEU denies the factual allegations contained in the complaint, but for purposes of considering NTEU's motion to dismiss, the Court is required, of course, to "construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." Herron v. Veneman, 305 F. Supp. 2d 64, 70 (D.D.C. 2004). As shown, dismissal is appropriate under that standard.

[2] A copy of the Buesgens decision is attached.



Attachment #5

# Your AT&T Statement

April 29, 2001



#BWNCJFM

STEVE IVEY

Customer #    7810⬛⬛⬛4804
Page 1 of 4

Customer Service:    1 800 224-5610
Call Collect:    706 644-0524
Text Phone (TTY):    1 800 855-2880

| Summary of charges | |
|---|---:|
| Previous balance | - 5.60 |
| Payments | 0.00 |
| **Credit balance as of Apr 29** | **- $5.60** |
| AT&T One Rate ®College Plan | 20.60 |
| Other charges and credits | 5.40 |
| Taxes and surcharges | 0.87 |
| **Current charges** | **$26.87** |
| **Total amount due** | **$21.27** |
| Date due | May 27, 2001 |

 **Have you heard**
There's more to your AT&T bill than just charges! You'll also find helpful information on services, products and calling plans.
Continued ▶

**Continues on back**

## Detach and return with payment

Please write your customer number on your check or money order made payable to AT&T. Do not send cash. Do not staple this portion to your payment. Thank you.

| Total amount due | $21.27 |
|---|---:|
| Date due | May 27, 2001 |
| Amount enclosed: | $ |

AT&T DBC
PO BOX 8226
AURORA IL 60572-8226

STEVE IVEY
April 29, 2001

Customer # 7810 ⬛⬛⬛ 4804

☐ Moving? Check the box and print new address on back.



*Attachment #6*



Customer Service: 1 800 224-5610  
Call Collect: 706 644-0524  
Text Phone (TTY): 1 800 855-2880  

April 29, 2001  
Customer # 7810 ▓▓▓▓ 4804  
Page 3 of 4

## AT&T One Rate® College Plan

| Description | Amount |
|---|---|
| Calling Card Calls | 20.60 |
| **Total AT&T One Rate (R) College Plan** | **20.60** |

| # | Date | Time | Where | Number called | Type | Rate | Min | Amount |
|---|---|---|---|---|---|---|---|---|
| 1. | Mar21 | 12:38pm | | | Station | N/Wknd | 1 | 0.20 |
| 2. | Mar21 | 12:39pm | | | Station | N/Wknd | 1 | 0.20 |
| 3. | Mar21 | 12:40pm | | | Station | N/Wknd | 2 | 0.40 |
| 4. | Mar21 | 12:43pm | | | Station | N/Wknd | 1 | 0.20 |
| 5. | Mar21 | 02:13pm | | | Station | N/Wknd | 1 | 0.20 |
| 6. | Mar26 | 04:15pm | | | Station | N/Wknd | 1 | 0.20 |
| 7. | Mar26 | 04:29pm | | | Station | N/Wknd | 4 | 0.80 |
| 8. | Mar26 | 04:37pm | | | Station | N/Wknd | 1 | 0.20 |
| 9. | Mar30 | 03:11pm | CHESAPEAKE Called From | VA 757 VA 757 | Station | N/Wknd | 1 | 0.20 |
| 10. | Mar30 | 03:12pm | CHESAPEAKE Called From | VA 757 VA 757 | Station | N/Wknd | 1 | 0.20 |
| 11. | Mar30 | 03:18pm | PORTSMOUTH Called From | VA 757 VA 757 | Station | N/Wknd | 1 | 0.20 |
| 12. | Mar31 | 04:40pm | ACWORTH Called From | GA 770 966- VA 757 | Station | N/Wknd | 1 | 0.20 |
| 13. | Mar31 | 04:41pm | ACWORTH Called From | GA 770 966- VA 757 | Station | N/Wknd | 40 | 8.00 |
| 14. | Apr03 | 02:32pm | | | Station | N/Wknd | 6 | 1.20 |
| 15. | Apr03 | 03:28pm | | | Station | N/Wknd | 2 | 0.40 |
| 16. | Apr03 | 03:31pm | | | Station | N/Wknd | 1 | 0.20 |
| 17. | Apr03 | 03:33pm | | | Station | N/Wknd | 1 | 0.20 |
| 18. | Apr03 | 03:34pm | | | Station | N/Wknd | 2 | 0.40 |
| 19. | Apr03 | 03:36pm | | | Station | N/Wknd | 1 | 0.20 |
| 20. | Apr03 | 04:35pm | | | Station | N/Wknd | 20 | 4.00 |
| 21. | Apr04 | 08:35pm | | | Station | N/Wknd | 8 | 1.60 |
| 22. | Apr04 | 08:43pm | | | Station | N/Wknd | 4 | 0.80 |
| 23. | Apr19 | 09:04pm | | | Station | N/Wknd | 2 | 0.40 |

Continues on back



UNITED STATES OF AMERICA
**FEDERAL LABOR RELATIONS AUTHORITY**
285 PEACHTREE CENTER AVE., SUITE 701, ATLANTA, GA 30303-1203
(404) 331-5300 FAX: (404) 331-5280

August 24, 2007

**ATLANTA REGIONAL OFFICE**

Steven Ivey
7611 S.OBT, #278
Orlando, FL 32809

                Re:    Department of the Treasury
                      Internal Revenue Service
                        and
                      National Treasury Employees Union
                      Chamblee, Georgia
                      Case Nos. AT-CO-07-0306 and AT-CA-07-0311

Dear Mr. Ivey:

The unfair labor practice charges in this case were filed with the Atlanta Regional Office on April 13 and April 16, 2007, respectively. After investigation, consideration of the evidence, and application of the law to the facts, issuance of a complaint is not warranted.

The charges, as clarified during the investigation, collectively allege that the Department of the Treasury, Internal Revenue Service, Chamblee, Georgia (the Agency) and the National Treasury Employees Union (the Union) violated the Federal Service Labor-Management Relations Statute (the Statute) by conspiring to effect your termination from employment in March 2001. Specifically, in Case No. AT-CO-07-0306, it is also alleged that the Union violated sections 7116(b)(1), (2), (3), (4), (5), (6), (7) and (8) of the Statute by ignoring the Charging Party's complaints made prior to his termination on March 7, 2001. In Case No. AT-CA-07-0311, it is also alleged that the Agency violated sections 7116(a)(1), (2), (3), (4), (5), (7) and (8) of the Statute by maintaining, and continuing to maintain, an ineffective rating system.

The investigation revealed that the Charging Party was a seasonal Data Transcriber for the IRS in Chamblee, Georgia from 1999 until he was terminated on March 7, 2001. He has not been employed in any government capacity since then. However, he has maintained litigation against both parties in MSPB and in the Federal Court system.

During the time period preceding his termination in March 2001, the Charged Party informed the Union of perceived irregularities in the process by which the Agency rates employees. He

*Attachment #7*

2

contends that the Union ignored his complaints. Also during this time, the Charging Party reported other matters, such as inappropriate conduct concerning the presidential campaign box on tax returns and employees allegedly earmarking tax returns from certain locations for closer scrutiny. The Union allegedly took no action on these reports, either, and the Charging Party then reported them via other sources. During his employ, the Charging Party did not file any grievances under the Agency's and Union's negotiated grievance procedure.

On March 7, 2001, the Agency terminated the Charging Party's employment. Two days previously, Robert Hall, the Agency's Data Conversion Branch Chief, met with the Charging Party and Union Steward Doug Van Buren. The Charging Party contends that Van Buren encouraged the Agency to terminate him. He also contends that subsequent to his termination, on March 30, 2001, two other Union officials slandered him by fabricating statements allegedly made by the Charged Party.

Section 7118(a)(4) does not permit the General Counsel to prosecute an unfair labor practice that occurred more than 6 months before a charging party files the charge. As a general rule, the limitations period begins to run from the date of the alleged unfair labor practice and applies so long as discovery occurs during the six months following the occurrence. *U.S. Dep't of Labor*, 20 FLRA 296, 298 (1985). The Authority recognizes few exceptions to this general rule, allowing the issuance of a complaint on a tardy charge when (1) the charged party concealed the action to prevent discovery within the 6-month period; (2) the charged party failed in a duty owed to the charging party that would have permitted the timely filing of the charge; or (3) sufficient factors require the equitable tolling of the 6-month statutory period. *Equal Employment Opportunity Comm'n, Washington, D.C. (EEOC)*, 53 FLRA 487 (1997) (Authority engages in general discussion of timeliness issue, including a clarification of equitable tolling and the discrediting of the "continuing violation" theory).

In *EEOC*, cited above, the Authority also discussed when it would be appropriate to allow equitable tolling of the Statute of Limitations. The Authority cited five factors: (1) lack of actual notice of filing requirements; (2) lack of constructive knowledge of filing requirements; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement. *Kelly v. NLRB*, 79 F.3d 1238, 1248 (1st Cir. 1996). The Authority also noted the general rule that "those who deal with the Government are expected to know the law . . ." 53 FLRA at 499, *citing Heckler v. Comm'n Health Servs.*, 467 U.S. 51, 63 (1984).

Here, although the Agency has continued to maintain the rating system alleged to be deficient, the Authority, as noted above, has rejected a "continuing violation" theory. *EEOC*. Moreover, inasmuch as there is no evidence of any change in the rating system since 2001, there can be no basis for a timely charge. With respect to the charge against the Union, the Charging Party contends that the Union should have informed him of the possibility of filing a charge with the FLRA, and that its failure to do so should toll the statute of limitations. However, as noted above, the Charging Party filed extensive litigation against both parties following his

3

termination. Thus, the Charging Party, in dealing with the government, was expected to know of his rights, and, in these circumstances, did not diligently pursue them. Nor was it reasonable for the Charging Party to remain ignorant of such rights for over six years after the alleged violation. Because of this, no complaint can issue, and it is not necessary to discuss or decide the merits of the charging party's allegations in either charge.

If you do not agree with my decision, you may file an appeal with the General Counsel at the address below. Your appeal should include the Case Nos. **AT-CO-07-0306 and/or AT-CA-07-0311** and be addressed to the:

> Federal Labor Relations Authority
> Office of the General Counsel
> 1400 K Street N.W., Second Floor
> Washington, D.C.  20424-0001

You can file your appeal by mail or by hand delivery. Whichever method you choose, please note that the last day for filing an appeal of the dismissal is **September 24, 2007.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than **September 24, 2007.** Please send a copy of your appeal to the Regional Director.

If you need more time to prepare your appeal, you may ask for an extension of time. Mail or hand-deliver your request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be **received** at least five days before the date the appeal is due, any request for an extension of time in this case must be **received** at the above address no later than **September 19, 2007.**

The procedures, time limits, and grounds for filing an appeal are set forth in the Authority's Regulations at section 2423.11(c) through (e) (Volume 5 of the Code of Regulations). 5 C.F.R. section 2423.11(c)-(e). The regulations may be found at any Authority Regional Office, public law library, some large general purpose libraries, Federal Personnel Offices and the Authority's Home Page Internet site: **www.FLRA.gov.** Enclosed is a document which summarizes commonly-asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

Nancy Anderson Speight
Regional Director

Enclosures

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

Steven Ivey,                )
                            )
        Plaintiff,           )
                            )   Civil Action No. 07- 0748
        V.                   )
                            )
HENRY PAULSON, Secretary, et al., )
U.S. Department of the Treasury,  )
                            )
        Defendant.          )

## MOTION TO AMEND COMPLAINT AS PER RULE 15

1.      With the following, the plaintiff, as per Rule 15 is amending the initial compliant with related and updated issues. Included is the issues of EEOC notification for proper administrative review.

**A. EEOC Review / Notification**

2.      With attachment A, the issues have been presented to the EEOC as reviewed in the appeal decision. Any new issues and allegations that have occurred since this appeal's decision have been presented to the EEOC on a rolling basis. The plaintiff, Ivey, has notified the EEOC, after waiting at least 30 days, of the intent to file the civil action herein. Therefore, the plaintiff has exhausted his administrative review.

1

*Attachment #8*

complaint, in addition to EEOC type complaints. The first was to the Tax Commissioner's Complaint Division in DC in November 1999. Because of such issues as retaliation for the first letter; failure to correct the originating problems, and more recent issues, the plaintiff wrote a second letter in November 2000 to the Tax Commissioner, the TIGTA, the OSC, and the oversight committee of Congress. This is what has been considered the beginning of EEO complaints, and, once back in NC, the plaintiff continued the process of supplying information and processing of the experiences at the IRS/ Treasury Center of the defendant. Therefore, the EOP, TIGTA, and OSC/MSPB processing occurred from this area for the plaintiff.

10.     Concentrating more to the contents of attachment # 4 it should be noted that this alleged call by the NTEU occurred while the plaintiff was in NC, no longer an employee of the defendant, at the end of March 2001. To date neither the defendant nor the NTEU have responded to request from Ivey for verification or support from Lisa Porter or Angela Strong, but continuously use such false testimony and documentation as support for dismissals and discrediting the plaintiff. The following explains the problems with attachment # 4 on a line -by -line basis.

**Lines 1 & 2**: This represents hearsay on the part of Lisa Porter and

6

Robert Hall which amounts to gossip in order to discredit the plaintiff.

**Line 3**: The plaintiff did not make such a call to NTEU, therefore, no conversation with Angela Strong. If there was such a call it does not explain how Angela Strong would have identified the caller as the plaintiff from that of a "crank" caller.

**Line 4**: During the meeting of attachment # 2 in which Doug Van Buren was improperly present, the plaintiff told him that the defendant was trying to terminate him because of reporting the above referenced violations and that the plaintiff had done so to the above listed agencies. With this in mind, why would the plaintiff call the NTEU to say he was terminated for his beliefs? This, also, occurred during a time when the plaintiff was contacting the EEOC and OSC. The term "beliefs" is strange because it suggest a more religious reasoning of views. There are such things as improbable character traits; for the plaintiff this would apply with the term "beliefs", equally so for talking to what would be a stranger about such "beliefs."

**Lines 5 & 6**: This question and statement for the plaintiff are highly usual because it evokes a role of Angela Strong, though a stranger to the plaintiff, a more personal familiar role to the plaintiff. It should be noted that the

7



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Steven Ivey, <br>     Plaintiff, <br><br> v. <br><br> Henry M. Paulson, Secretary, <br> Department of the Treasury <br>     Defendant. | Case Number 07-0748 (RJL) |

## ANSWER

Defendant Henry Paulson, Secretary of the United States Department of the Treasury (the "Department" or the "Agency"), by and through his undersigned counsel, hereby answers Plaintiff's First Amended Complaint and Complaint as follows:[1]

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

The doctrines of res judicata and/or collateral estoppel bar Plaintiff's claims.

### Second Affirmative Defense

The Court lacks jurisdiction over some or all of Plaintiff's claims.

### Third Affirmative Defense

Plaintiff has failed to exhaust administrative remedies.

---

[1] Plaintiff's First Amended Complaint should supersede the original complaint, thereby making no response to that complaint necessary. However, it appears that Plaintiff may have intended the amended complaint to be a continuation of the first complaint he filed, rather than replacing it. Accordingly, this answer includes Defendant's response to both the original complaint and the amended complaint.

*Attachment #9*

Hall to the identified recipients. Defendant denies the remaining allegations of Paragraph 5.

6. Denied.

7. Denied.

8. Denied.

9. Defendant lacks information sufficient to form a belief as to the truth of the allegations of Paragraph 9, and therefore denies them.

10. To the extent the allegations of Paragraph 10 purport to describe the requirements of the Federal Rules of Evidence, Defendant respectfully refers the Court to the relevant rule(s) and denies all contrary allegations. Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10, and therefore denies them.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied

19. Denied.

20. To the extent the allegations of Paragraph 20 purport to characterize attachment two to the amended complaint, Defendant respectfully refers the Court to the attachment for a true and complete statement of its contents, and denies all contrary allegations. Defendant denies the

-5-

remaining allegations of Paragraph 20.

21. Denied.

22. To the extent the allegations of Paragraph 22 purport to characterize attachment two to the amended complaint, Defendant respectfully refers the Court to the attachment for a true and complete statement of its contents, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 22.

23. Denied.

24. Denied.

25. Denied.

26. To the extent the allegations of Paragraph 26 purport to characterize the Restructuring and Reform Act of 1998, Defendant respectfully refers the Court to that statute for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 26.

27. To the extent the allegations of Paragraph 27 purport to characterize 5 U.S.C. § 7513, Defendant respectfully refers the Court to that statute for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 27.

28. To the extent the allegations of Paragraph 28 purport to characterize the Restructuring and Reform Act of 1998, Defendant respectfully refers the Court to that statute for a true and complete statement of its requirements, and denies all contrary allegations. Defendant denies the remaining allegations of Paragraph 28.

29. Denied.